IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 16, 2013 Session

## JULIA YOUNG, on behalf of the estate of CECIL C. YOUNG v. LISA KENNEDY, M.D. and METHODIST HEALTH SYSTEMS, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003278-02, Div. I     John R. McCarroll, Judge**

---

**No. W2012-00836-COA-R3-CV - Filed August 13, 2013**

---

This case involves the application of the medical malpractice statute of limitations. The trial court granted summary judgment to the defendant doctor, finding that the statute of limitations defense was not waived by her failure to raise it in her first pre-answer motion, that the defense was sufficiently pleaded, and that the undisputed facts in the record supported a finding that the statute of limitations had expired at the time of filing the initial complaint. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Amanda K. Strange, Memphis, Tennessee, for the appellant, Julia Young, on behalf of the estate of Cecil C. Young.

Andrea N. Malkin and Tiffany Taylor Bowders, Memphis, Tennessee, for the appellees, Lisa Kennedy, M.D. and Methodist Health Systems, Inc.

**OPINION**

**I. Background**

Cecil C. Young was admitted to Methodist North Hospital on March 27, 2001. At the time, he was in remission from lymphoma but was experiencing radiation pneumonitis and a pulmonary infection that were not responding to oral antibiotics. Upon admission, Mr. Young was seen by Defendant/Appellant Dr. Lisa Kennedy, a pulmonary specialist. Dr.

Kennedy prescribed oral steroids, which initially caused Mr. Young's condition to improve. Dr. Kennedy later performed a fibrotic bronchoscopy on Mr. Young on April 3, 2001. According to the Complaint in this case, Mr. Young was discharged from the hospital on the same day, despite tests that allegedly revealed the presence of pseudomonas aeruginosa.[1] According to the Complaint, Dr. Kennedy failed to prescribe any medication specifically to treat that infection.

On April 18, 2001, Mr. Young appeared at his primary care physician's office, complaining of a worsening in his condition. Office tests showed that Mr. Young's blood pressure was low. Mr. Young's doctor ultimately sent him to the emergency room at Methodist North Hospital. Upon arrival on April 18, 2001, Mr. Young was admitted into the Intensive Care Unit and was prescribed an array of medications. After a period of treatment in the Intensive Care Unit, Mr. Young was transferred to the Transitional Care Unit, which is a rehabilitation wing of the hospital. On May 9, 2001, however, Mr. Young's condition began to deteriorate and he was transferred back to the Intensive Care Unit. According to the Complaint, staff at Methodist Hospital attempted to contact Dr. Kennedy on May 9, 2001, but Dr. Kennedy failed to respond for several hours, despite multiple telephone calls. While in the Intensive Care Unit, Mr. Young was seen by Dr. Kerry Cleveland, an infectious disease doctor. Although Dr. Cleveland placed Mr. Young on a ventilator and Mr. Young later underwent a tracheotomy, his condition continued to worsen. Mr. Young was then heavily medicated and sedated.

Mr. Young's wife, Plaintiff/Appellant Julia Beth Young, later described Mr. Young's condition on May 9, 2001, stating: "The day Mr. Young was to be discharged he developed a high fever. It was a remarkable appearance that I've never seen. His face was red like it was scalded. He was vomiting, and it was dramatic, very dramatic." Ms. Young also testified that although she was unsure at the time of Mr. Young's exact diagnosis, she was aware that he had acquired an infection. With regard to this infection, Ms. Young testified: "It was just an obvious thing from watching what happened. I mean, and the isolation that happened afterwards, I knew it was a hospital acquired infection." Ms. Young clarified that she suspected that Mr. Young had acquired a hospital infection "at the time." Ms. Young also testified that any treatment was seriously delayed by Dr. Kennedy's failure to respond to their calls.

Ms. Young testified that she questioned Dr. Kennedy twice during Mr. Young's hospitalization regarding his treatment. First, Ms. Young expressed concern that the

---

[1] Pseudomonas areruginosa is a "species of . . . . bacteria that may cause various human diseases ranging from purulent meningitis to nosocomial infected wounds." Mosby's Medical, Nursing, and Allied Health Dictionary 1343 (5th ed. 1998).

antibiotic prescribed to Mr. Young was causing an adverse reaction. According to Ms. Young, Dr. Kennedy refused to change the antibiotic. Ms. Young further testified about another incident in which she confronted Dr. Kennedy regarding Mr. Young's course of treatment. This second confrontation occurred while Mr. Young was still lucid (prior to Mr. Young slipping into a coma on June 6, 2001). During the argument, as Ms. Young described the confrontation, Ms. Young expressed her displeasure with Dr. Kennedy's suggested course of treatment and requested that Mr. Young be transferred to another hospital to allow him to be treated by another doctor, as Ms. Young was "unhappy with Dr. Kennedy." Specifically, Ms. Young took issue with Dr. Kennedy's belief that Mr. Young was dying of lymphoma, and her suggestion to just make Mr. Young comfortable. Indeed, Ms. Young testified that Mr. Young shared her concerns about Dr. Kennedy, indicating that he was displeased with the level of care he was receiving and asking to be moved to a different hospital. Ms Young testified:

> He was afraid to stay at night, and he expressed that. I felt like the entire staff and Dr. Kennedy included in that had the opinion that he was dying from lymphoma and that there was not much reason to do more than just make him comfortable. That was my feeling at the time.

Instead, Ms. Young believed that a more aggressive course of treatment was warranted. Ms. Young also testified that she informed the hospital staff that she believed that Mr. Young was being prescribed too much medication, which was causing his blood pressure to decrease. Dr. Kennedy's patient notes also evidence this confrontation, which she notes took place on June 6, 2001. Dr. Kennedy's notes state:

> Family not happy [with] my care. They feel that I am keeping him too sedated, not allowing him to participate in physical therapy. They also question my management of his fluids and pressors. Furthermore, they do not accept my assessment of his prognosis. They would like another pulmonologist to assume his care.

Despite this argument, Mr. Young stayed in the Intensive Care Unit of Methodist North Hospital. Mr. Young slipped into a coma on June 6, 2001 and passed away on June 12, 2001.

On July 22, 2001, Ms. Young filed a Quality Incident Report Form and Appeal request with the Joint Commission on Accreditation of Healthcare Organization ("JCAHO"). In the complaint, Ms. Young alleged that Dr. Kennedy's negligence "sent [Mr. Young] spiraling into a decline." Specifically, Ms. Young alleged that Dr. Kennedy and the hospital

staff were negligent in failing to prevent Mr. Young from acquiring a hospital infection on May 9, 2001, and that Dr. Kennedy failed to treat the infection properly. The complaint further alleged that due to Dr. Kennedy's failure to return to the hospital despite repeated calls, "[t]here was a delay in discovery of the [hospital acquired] infection with valuable time lost as a result. Dr. Kennedy did not inform us [Mr. Young's] transfer back to the [the Intensive Care Unit] was due to an in-house acquired staph infection." In addition, Ms. Young alleged that Dr. Kennedy and the hospital staff were negligent in over-medicating Mr. Young, causing him to slip into a coma, stating:

> Specific negligent behavior by RN [] Harvey on June 6, 2001, through medication abuse or mismanagement, resulting in a crisis event, precipitating a coma from which [Mr. Young] never recovered. I repeatedly requested Dilaudid be reduced or another drug substituted. . . . Dr. Kennedy continued to order Dilauidid.

Ms. Young also filed a complaint with the Tennessee Department of Health, Division of Health Related Boards. She was interviewed in connection with her complaint on September 5, 2001. In the interview, Ms. Young reiterated her view that Dr. Kennedy was negligent in allowing Mr. Young to acquire an infection. The interviewer drafted a report of Ms. Young's interview. According to the interviewer:

> [Ms. Young] stated that around May 9th [or] 10th she called Dr. Kennedy after a sudden onset of change in her husband['s] condition. . . . She stated that Dr. Kennedy was summoned by the nurse to come and she refused to come. She stated that it was sometime that night before they were able to diagnose that her husband had contracted a nasocomial staphylococcal infection. . . . She stated that she didn't find that out until much later on because by midnight they had put her husband back in [the Intensive Care Unit].
>
> *   *   *
>
> She stated something drastic happened. . . . She stated she was so in the dark that she really didn't know what happened and she couldn't get anyone to tell her what happened. Except she stated she felt there was a good deal of negligence and problems going on there that needed to be addressed.
> I asked her what caused her to feel that something happened. She stated that the day whatever happened happened

-4-

[N]urse [] Harvey told her that she had given her husband some Dilaudid, Tylenol, and Diprivan. She stated she expressed some concern about that because it had taken her husband's blood pressure down. She stated that Nurse Harvey stated that they had to keep her husband sedated because he was on the ventilator. . . . She stated that she repeatedly tried to get the doctor to lower the amount of Dilaudid administered to her husband but they wouldn't listen. She stated when she came in that day that whatever happened happened there were several nurses in the room . . . She stated he never woke up after that. . . . they (her family) kn[e]w that something happened and they tried to find out what.[2]

On June 11, 2002, Ms. Young, individually and as next of kin for Mr. Young, along with the couple's children,[3] filed a wrongful death action ("the initial Complaint") against the Defendants/Appellees Dr. Kennedy, and Methodist Health Systems, Inc. ("Methodist"), which operated Methodist North Hospital.[4] The initial Complaint alleged that Dr. Kennedy and Methodist caused Mr. Young's death due to their medical negligence surrounding a period of treatment from March 27, 2001 to June 12, 2001. Specifically, the initial Complaint alleged that Mr. Young acquired an infection on May 9, 2001, that he slipped into a coma on June 6, 2001, and that he died on June 12, 2001.

On August 14, 2002, Dr. Kennedy filed a Motion for Judgment on the Pleadings,[5]

---

[2] Nothing in the record indicates the resolution of either Ms. Young's JCAHO complaint or the Tennessee Department of Health investigation.

[3] Ms. Young's individual claims and the claims of her children were eventually non-suited and are not at issue in this appeal.

[4] The Complaint also named Olympus America, Inc. ("Olympus"), the company that manufactured the endoscopic equipment used in Mr. Young's fibrotic bronchoscopy, and Dr. Cleveland, the infectious disease doctor who treated Mr. Young at Methodist North. According to the parties, Ms. Young ultimately nonsuited her case against Dr. Cleveland and the claim against Olympus was removed to the United States District Court for the Western District of Tennessee. Accordingly, neither are a party to this appeal.

[5] As a point of practice, we note that the Rule governing Motions for Judgment on Pleadings specifically states that such motions are to be filed "[a]fter pleadings are closed." At the time Dr. Kennedy's motion was filed, the pleadings had not closed. Accordingly, this motion was untimely, and should have been considered a Motion to Dismiss for failure to state a claim upon which relief can be granted. *See Timmins v. Lindsey*, 310 S.W.3d 834, 838 (Tenn. Ct. App. 2009) ("When a motion for judgment on the pleadings is made by the defendant, it is in effect a motion to dismiss for failure to state a claim upon which relief can
(continued...)

which motion did not raise the issue of the expiration of the statute of limitations. Methodist filed an Answer to the Complaint on September 23, 2002. Ms. Young entered a Notice of Voluntary Non-suit as to Dr. Kennedy on January 6, 2003. The case against Methodist remained pending.

On January 8, 2003, Methodist filed a Motion for Summary Judgment alleging that Ms. Young's failure to designate an expert witness was fatal to her claim. Methodist filed the affidavit of its own expert, who opined that Mr. Young's death was not caused by any negligence on the part of Methodist.

Ms. Young re-filed her Complaint against Dr. Kennedy on December 12, 2003 ("the Complaint"). The Complaint alleged the same factual scenario as the first action. Summons was not issued to Dr. Kennedy until July 28, 2004. Dr. Kennedy filed a Motion to Dismiss the Complaint, or in the Alternative for Judgment on the Pleadings ("Motion to Dismiss"), on August 24, 2004. Dr. Kennedy alleged that Ms. Young's Complaint was barred by the expiration of the one-year statute of limitations. On April 22, 2005, Dr. Kennedy filed a Memorandum in Support of her Motion to Dismiss, alleging the acts of negligence occurred on May 9, 2001 and June 6, 2001, and the Complaint was filed more than one year later, on June 11, 2002.

The case against Dr. Kennedy was consolidated by consent order on June 3, 2005 with the Complaint pending against Methodist. On June 7, 2005, Dr. Kennedy re-filed the Motion to Dismiss and accompanying Memorandum in the consolidated case. On August 17, 2005, Dr. Kennedy filed an Answer to Ms. Young's Complaint, again raising the defense that the claim was barred by the expiration of the statute of limitations. The case was then stayed due to Ms. Young's bankruptcy proceeding. The stay was lifted on March 18, 2009. At some point, Ms. Young's initial attorney withdrew. Ms. Young's current attorney entered a notice of appearance on her behalf on March 25, 2011.

On June 10, 2011, Methodist renewed its Motion for Summary Judgment, based on Ms. Young's failure to disclose an expert witness. At the hearing on July 12, 2011, Ms. Young admitted she had not timely disclosed the name of an expert witness regarding Methodist's negligence, but the trial court allowed Ms. Young an additional sixty (60) days to disclose an expert witness. An order to that effect was entered on July 26, 2011.

---

[5](...continued)
be granted."); *see also* **State v. NV Sumatra Tobacco Trading Co.**, —— S.W.3d ——, 2013 WL 1248285, at *9 (Tenn. 2013) ("Courts should give effect to the substance of motions rather than their form or title.").

On December 12, 2011, Dr. Kennedy filed a Motion for Summary Judgment based on the expiration of the statute of limitations. Dr. Kennedy later submitted depositions from fact witnesses, including Ms. Young, to support her statute of limitations defense. Methodist filed a joinder to this Motion on December 13, 2011.

The trial court eventually denied Methodist's Motion for Summary Judgment on January 5, 2012, noting that the theory of liability against Methodist was for vicarious liability for the acts or omissions of Dr. Kennedy.

The trial court held a hearing on Dr. Kennedy's Motion for Summary Judgment on January 12, 2012. At the hearing, the trial court directed the parties to submit additional briefs. According to Dr. Kennedy, Ms. Young did not argue that there were material factual disputes that prevented granting summary judgment. Another hearing was held on March 6, 2012, in which the trial court orally granted Dr. Kennedy's Motion for Summary Judgment on the issue of the expiration of the statute of limitations. The trial court further ruled that Summary Judgment should be granted in favor of Methodist, as it was only vicariously liable for any negligence found to have been committed by Dr. Kennedy. An order to that effect was entered on March 22, 2012, in which the trial court specifically found that Dr. Kennedy had not waived the defense of the expiration of the statute of limitations for failure to raise it in her initial Motion for Judgment on the Pleadings and that Ms. Young had notice that the injury occurred, for purposes of the statute of limitations, on May 9, 2001 and June 6, 2001. Thus, the Complaint was filed beyond the one-year statute of limitations. Specifically, the trial court stated:

> [T]he Court finds that the Motion for Summary Judgment on behalf of Dr. [] Lisa Kennedy and Methodist [] is well taken and should be granted.
> The Court finds as a matter of law that Dr. Kennedy did not waive the statute of limitations defense. The Court finds that Dr. Kennedy adequately pled the statute of limitations defense in this action.
> The Court finds as to Dr. Kennedy that the one year statute of limitations, set forth in [Tennessee Code Annotated Section] 29-26-116, accrued on May 9, 2002, because Ms. [] Young has notice that her husband, Mr. [] Young, suffered an alleged injury on May 9, 2001, while a patient as Methodist Hospital-North in Memphis, Shelby County, Tennessee. The Court finds further that Ms. Young had notice of a second alleged injury on June 6, 2001 at Methodist Hospital-North . . . . Because [the] Complaint in this matter was not filed until June

11, 2002, the statute of limitations set forth in [Tennessee Code Annotated Section] 29-26-116 barred the claim. The action was not filed within one year of Ms. Young's notice on May 9, 2001 or on June 6, 2001. The cause of action as to Dr. Kennedy should be dismissed, and summary judgment should be granted.

The Court further finds that because the action was dismissed as to Dr. [] Kennedy, summary judgment should also be granted as to Methodist []. Methodist [] is a Defendant in this action only on a theory of vicarious liability for the action of the Defendant Dr. [] Kennedy. Dr. Kennedy has been exonerated by an adjudication of non-liability, and, therefore, the action against Methodist [] is extinguished. Summary Judgment as to the Defendant, Methodist [] should be granted. The Court finds as a matter of law, based on the undisputed facts set forth herein, that there are no genuine issues of material fact, and the Defendants are entitled to summary judgment as a matter of law.

The trial court certified its ruling as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[6] Ms. Young filed a timely notice of appeal.

## II. Issues Presented

Ms. Young raises the following issues, which are restated from her brief:

1. Whether the trial court erred in finding that Dr. Kennedy

---

[6] Rule 54.02 of the Tennessee Rules of Civil Procedure Provides:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

did not waive the statute of limitations affirmative defense under Rule 8.03 of the Tennessee Rules of Civil Procedure?

2. Whether the trial court erred in finding that Dr. Kennedy did not fail to prosecute the affirmative defense of the statute of limitations?

3. Whether the trial court abused its discretion in finding that Ms. Young failed to meet the appropriate statute of limitations?

## III. Analysis

### A. Waiver

### 1. Waiver by Failure to Raise Affirmative Defense in First Motion

Ms. Young first argues that the trial court erred in concluding that Dr. Kennedy had not waived the defense of the statute of limitations by failing to raise the defense in her first Motion for Judgment on the Pleadings, filed on August 14, 2002, prior to the non-suit. Rule 8.03 of the Tennessee Rules of Civil Procedure governs affirmative defenses, such as the statute of limitations. Rule 8.03 provides: "In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . statute of limitations, . . . and any other matter constituting an affirmative defense." In addition, Rule 12.08 provides, in pertinent part, that any defenses not properly raised may be waived:

> A party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, (provided, however, the defenses enumerated in 12.02(2), (3), (4) and (5) shall not be raised by amendment), except (1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the defense of lack of capacity, and the objection of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and except (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Specifically, Ms. Young argues that Dr. Kennedy was required to either include her statute of limitations defense in her first motion, i.e., the initial Motion for Judgment on the Pleadings filed prior to the non-suit, or waive the defense. Because Dr. Kennedy failed to raise the expiration of the statute of limitations in the August 14, 2002 motion, Ms. Young contends that any argument regarding the alleged expiration of the statute of limitations is waived.

To support this argument, Ms. Young relies on the Tennessee Supreme Court case of ***Denny v. Webb***, 281 S.W.2d 698 (Tenn. 1955). In ***Denny***, the plaintiff filed a wrongful death action against the defendant. The defendant filed an answer, but nothing in the record suggested that the defendant pleaded the expiration of the statute of limitations. The Complaint was later non-suited and re-filed within one-year of the non-suit. The defendant then raised the issue of the expiration of the statute of limitations. The trial court entered judgment for the plaintiff and the defendant appealed. The Court of Appeals held that the claim was barred by the one-year statute of limitations for personal injuries. The Supreme Court reversed the Court of Appeals and reinstated the trial court verdict, finding that the issue of the expiration of the statute of limitations had been waived by the failure to properly and timely plead it. ***Id.*** at 701. The Court explained:

> In order to rely on the bar of the statute of limitations an affirmative plea must be affirmatively plead[ed] by some appropriate plea. If the statute is not plead[ed] in proper time and manner it is deemed waived and cannot be set up as a defense. ***Henderson v. Henderson***, 158 Tenn. 452, 14 S.W.2d 714. Since the stipulation shows that to this first suit a plea of the general issue had been filed, and there is no claim or showing that a plea of the statute of limitations was filed in this suit, then the inference clearly is to be drawn that the first suit was filed within the year. Able counsel certainly would have plead[ed] the statute to the first suit if it had not been filed in time.
>
> When the defendant was required to plead specially he was required to expressly state all substantive facts relied on as a defense. He stated in his first pleas or denied every conceivable thing that one might think of. Some of these pleas were stricken because they were merely doing what could be done under the general issue. Even in the amended pleas pleading specifically there is no mention anywhere at all that the first suit was not filed within a year from the date of the

accident. The only thing at all in these special pleas concerning the statute of limitations is this plea of the statute of limitations which is that suit was not brought within 'one year before this suit was brought' clearly referring to the present suit.

*Denny v. Webb*, 281 S.W.2d at 701. Thus, the Court noted that: (1) the defendant failed to raise the issue of the expiration of the statute of limitations in its initial answer after the first suit was commenced; and (2) even after the non-suit, the defendant failed to properly plead that the statute of limitations barred the claim due to its being filed more than one year after the discovery of the injury; instead, the defendant merely pleaded that the second action was filed more than one year from the non-suit. Accordingly, the Tennessee Supreme Court held that the defense alleging that the one-year personal injury statute of limitations had expired at the time the original suit was filed was waived by the defendant's failure to timely and properly plead it.

Dr. Kennedy argues that the *Denny* case is not analogous to the case-at-bar; therefore, she contends that application of *Denny* should not result in a waiver of her statute of limitations defense. Specifically, Dr. Kennedy points out that the defendant in *Denny* failed to raise the expiration of the statute of limitations in its answer to the first complaint, rather than in any pre-answer motion. Dr. Kennedy argues that the affirmative defense of the expiration of the statute of limitations cannot be waived by failing to include the defense in a pre-answer motion, as a motion is not a "responsive pleading," and, therefore, waiver does not apply. *See* Tenn. R. Civ. P. 12.02 (requiring that defenses be raised "in a responsive pleading"). Dr. Kennedy cites this Court's opinion in *Mosby v. Colson*, No. W2006-00490-COA-R3-CV, 2006 WL 2354763 (Tenn. Ct. App. Aug. 14, 2006). In *Mosby*, this Court stated that "[a] motion to dismiss is not a responsive pleading . . . ." *Id.* at *11. This reasoning appears to be consistent with federal treatises on the subject. *See* 27 Fed. Proc., L. Ed. § 62:98 ("Failure to raise an affirmative defense in a motion to dismiss does not mean that the defense has been waived, since a motion to dismiss is not a pleading as defined by the applicable rule, and therefore is not, in most cases, a responsive pleading."). We note, however, that the *Mosby* opinion concerned the issue of an amendment pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure, rather than waiver of affirmative defenses. *Mosby*, 2006 WL 2354763, at *11. Indeed, Dr. Kennedy cites no cases in which Tennessee courts have held that a motion to dismiss is not a responsive pleading for purposes of waiver of defenses under Rule 12.08. Regardless, Dr. Kennedy argues that she was only required to raise the issue of the expiration of the statute of limitations in her Answer, rather than in any pre-answer motion.

In contrast, Ms. Young argues that Rule 12.08 does not require a "responsive pleading" in order for waiver to apply. Instead, Ms. Young points to the plain language of

the Rule, which states that defenses may be raised by answer "if the party has made no motion." Tenn. R. Civ. P. 12.08. Because Dr. Kennedy did make a motion, without raising the affirmative defense of the statute of limitations, Ms. Young argues that such defense is waived.

We agree with Dr. Kennedy's interpretation of Rule 12.08, though we rely on different reasons than those posited by Dr. Kennedy in her brief. Instead, we find Rule 12.02 of the Tennessee Rules of Civil Procedure instructive on this issue. Rule 12.02 provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, ***except that the following defenses may at the option of the pleader be made by motion in writing***: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19, and (8) specific negative averments made pursuant to Rule 9.01. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.

(emphasis added). Accordingly, by the plain language of Rule 12.02, only certain defenses may be raised by pre-answer motion. The defense of the expiration of the statute of limitations is not among the defenses that may be raised by pre-answer motion. Thus, it would be illogical to conclude that a defendant could waive its statute of limitations defense by failing to raise such defense in a pre-answer motion, when Rule 12.02 does not permit the expiration of the statute of limitation to be raised in a pre-answer motion.

Instead, the only way to raise the defense of the expiration of the statute of limitations by pre-answer motion is on the basis of Rule 12.02(6) for "failure to state a claim upon which relief can be granted." Indeed, courts of this State have consistently referred to a motion to dismiss based on the expiration of the statute of limitations as being a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12.02(6). *See, e.g.,* ***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 463–64 (Tenn. 2012) (considering a Rule 12.02(6) motion on the basis of the alleged expiration of the

statute of limitations); ***Swafford v. Comm'r of Revenue***, No. M2011-00913-COA-R3-CV, 2012 WL 840648, at \*1 (Tenn. Ct. App. March 13, 2012) (noting that the defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted on the ground that the statute of limitations had expired); ***McConnell v. Fuller***, No. E2010-00530-COA-R3-CV, 2011 WL 538855, at \*1 (Tenn. Ct. App. Feb. 15, 2011) (considering the defendant's motion to dismiss for failure to state a claim upon which relief can be granted on the ground that the statute of limitations had expired); ***Cunningham v. Jones***, 274 S.W.3d 659, 662 (Tenn. Ct. App. 2008) (determining whether the trial court erred in granting the defendant's motion to dismiss for failure to state a claim upon which relief can be granted on the basis that the one-year medical malpractice statute of limitations had expired). Rule 12.08 provides that a motion for failure to state a claim upon which relief can be granted is not waived by failure to raise such defense in a pre-answer motion. Instead, the Rule provides that a motion to dismiss for failure to state a claim "may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits." Tenn. R. Civ. P. 12.08. Thus, the defense of the statute of limitations is not waived by the failure of the defendant to raise the defense in a pre-answer motion.

Our decision is in accord with both federal law, as discussed above, and Tennessee jurisprudence. *See also* ***United States v. Valdez***, 195 F.3d 544, 548 (9th Cir. 1999) ("government only filed a motion to dismiss . . . and never filed an answer to the . . . motion. We thus deem it premature, at this stage, to hold that the government has waived any possible procedural default defense."); ***U.S. v. Burzynski Cancer Research Institute***, 819 F.2d 1301 (5th Cir. 1987) (holding that because the defendants initial motions were not "responsive," the defendant had not waived their affirmative defense by failing to include it in the initial motions); ***Serrano v. Torres***, 764 F.2d 47, 49 (1st Cir. 1985) ("There is . . . no requirement under Rule 12 to affirmatively raise the statute of limitations defense by motion."); ***Bennett v. Mueller***, 364 F. Supp. 2d 1160 (C.D. Cal. 2005) ("[A] a motion to dismiss is not a pleading as defined by Fed. R. Civ. P. 7(a), and therefore is not, in most cases, a responsive pleading as defined by Fed. R. Civ. P. 12. Accordingly, failure to raise an affirmative defense in a motion to dismiss does not mean that the defense has been waived."); ***Daingerfield Island Protective Soc'y v. Lujan***, 797 F.Supp. 25, 29 (D.D.C.1992) ("While it is the general practice to raise a statute of limitations defense by motion under Rule 12(b)(6), it is not an error to fail to do so . . . . [T]his defense cannot be waived by the failure to interpose it in a motion under Rule 12."). Tennessee Civil Procedure discusses the application of Rule 12.08 in this context in detail:

> Just as federal courts did with Rule 12.08's federal predecessor, Tennessee courts have generally applied Tennessee Rule 12.08 without strict adherence to its text. In fact, although courts have cited the rule frequently, they have almost never

-13-

attempted to construe the precise language of Rule 12.08. This latter phenomenon, given the rule, is simply carrying to a higher level the maxim that "Equity will not do a vain act."

On the assumption that Rule 12.08 should have some meaning, we suggest that it be read to give effect to its intent and, to the extent possible, its text. **If Rule 12.08 is not to produce absurd results, the provision for waiver of defenses should be read as referring only to those defenses that may be raised by a Rule 12.02 pre-answer motion.** When Rule 12.08 is so limited, its natural and probable meaning is as follows:

A. A party may raise the following "defenses" by answer or by pre-answer motion:

1. lack of jurisdiction over the subject matter;
2. lack of jurisdiction over the person;
3. improper venue;
4. insufficiency of process;
5. insufficiency of service of process;
6. failure to state a claim on which relief can be granted;
7. failure to join an indispensable party; and
8. the lack of capacity of a party to sue or be sued.

B. A party who files a pre-answer motion pursuant to Rule 12.02 waives any of the following defenses that are not included in the motion:

1. lack of jurisdiction over the person;
2. improper venue;
3. insufficiency of process; and
4. insufficiency of service of process.

C. A party who does not file a pre-answer motion pursuant to Rule 12.02 waives any of the following defenses by not including them in his first answer:

1. lack of jurisdiction over the person;
2. improper venue;
3. insufficiency of process; and

4. insufficiency of service of process.

* * *

E. The **defenses of failure to state a claim**, failure to join a party required to be joined by Rule 19, and lack of capacity **may be raised by pre-answer motion or by answer, and none of the three defense[s] is irrevocably waived by failure to raise it in a previous motion or pleading.** These defenses may also be presented by post-answer motion, such as one for judgment on the pleadings, or at the trial on the merits.

Robert Banks, Jr., & June F. Entman, Tennessee Civil Procedure, § 5-6(v) (3d ed. 2012) (footnotes omitted) (emphasis added). Tennessee Civil Procedure acknowledges, however, that:

[The above interpretation of Rule 12.08] is inconsistent with a literal reading of Rule 12.08's first proposition. As pointed out, subject to three exceptions, Rule 12.08 read literally permits a party to raise any defense by answer or reply, or by amendment thereto, only if the party has filed no motion. Thus, if a defendant responds to the complaint by filing a pre-answer motion to dismiss on grounds of lack of personal jurisdiction and insufficiency of service of process, the defendant has (with three exceptions) waived all other defenses, including statute of limitations, res judicata, estoppel, and lack of capacity to sue or be sued (except to the extent those defenses can be assimilated under the umbrella of "failure to state a claim"). Having previously filed a motion not raising the defenses of failure of consideration and res judicata, for example, the defendant may not present those defenses in an answer filed after the motion to dismiss has been denied. Or, when a party has made a post-answer motion for judgment on the pleadings based upon the defendant's failure to state a claim, the party cannot amend his or her answer to plead the defense of estoppel if it had not previously been raised.

Tennessee Civil Procedure, at § 5-6(w) (footnotes omitted). According to Tennessee Civil Procedure, however: "Such a reading of Rule 12.08, although literally correct, would lead

-15-

to absurd results and the Tennessee courts have largely ignored the literal text of the rule."
Tennessee Civil Procedure, at § 5-6(w). As explained by the treatise:

> The troublesome phrase in Rule 12.08, "all defenses and objections which the party does not present either by motion as herein above provided, or, if the party has made no motion, in the party's answer or reply, or amendments thereto," is qualified by the parenthetical providing that the four dilatory defenses may not be raised by an amendment to an answer. The current treatment in federal courts of these four defenses is now found in Federal Rule 12(h)(1), which provides that a party waives any of the four dilatory defenses that are omitted in a pre-answer motion or, if the party filed no pre-answer motion, in the party's answer or an amendment thereto permitted to be filed as a matter of course.
>
> The apparent intent of Rule 12.08 was to provide a similar provision for waiver, while eliminating the option of raising any of these four defenses by amendment to the answer. A pleader should assume, therefore, that the defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process will be waived if not included in the pleader's first response to the complaint, whether it be by answer or a Rule 12.02 motion. A party who has raised one or more of these defenses in the party's original response to the complaint, whether by motion or by answer, does not waive the defense by defending on the merits.

Tennessee Civil Procedure, at § 5-6(w) (footnotes omitted).

Based on the foregoing, we likewise conclude that a party does not waive its statute of limitations defense by failing to raise such defense in its pre-answer motion. Instead, the defense may be raised by a motion to dismiss for failure to state a claim upon which relief can be granted, or in the party's answer to the complaint, regardless of whether a pre-answer motion has been filed. Turning to the record, we conclude that Dr. Kennedy timely raised her statute of limitations defense. Not only did Dr. Kennedy raise the defense in her first Answer to Ms. Young's Complaint, but she also raised the defense in a Motion to Dismiss for failure to state claim upon which relief can be granted prior to filing her Answer in this case. Accordingly, the trial court correctly concluded that Dr. Kennedy had not waived the defense by failing to timely raise it.

**2. Waiver by Failure to Affirmatively Plead Short and Plain Facts**

Ms. Young next argues that Dr. Kennedy waived the defense of the expiration of the statute of limitations by failing to sufficiently plead the defense. As previously discussed, Rule 8.03 requires that in order to adequately plead all affirmative defenses, including the statute of limitations, "a party shall set forth affirmatively facts in short and plain terms relied upon to constitute" the defense. In addition, the Tennessee Supreme Court has held that although Rule 12.08, regarding waiver, does not contain a specificity requirement, Rule 8.03 "clearly does." ***Barker v. Heekin Can Co.***, 804 S.W.2d 442, 444 (Tenn. 1991); *see also* ***Pratcher v. Methodist Healthcare Memphis Hospitals***, --- S.W.3d ----, 2013 WL 3270836, at *7 (Tenn.2013) ("Rule 8.03 clearly contains a 'specificity requirement.'"). "'Conclusory allegations' do not satisfy the specificity requirements of Rule 8.03." ***Pratcher***, 2013 WL 3270836, at *7 (quoting ***ACG, Inc. v. Se. Elevator, Inc.***, 912 S.W.2d 163, 170 (Tenn. Ct. App.1995)).

In this case, Ms. Young argues that Dr. Kennedy failed to set forth specific, "affirmative facts in short and plain terms relied upon to constitute" her defense. *See* Tenn. R. Civ. P. 8.03. To support her argument, Ms. Young relies on this Court's opinion in ***Allgood v. Gateway***, 309 S.W.3d 918 (Tenn. Ct. App. 2009). In ***Allgood***, the defendant, Dr. Hoffman, filed an answer raising the defense of insufficiency of service of process. Insufficiency of service of process, like the expiration of the statute of limitations, is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure. Dr. Hoffman later filed a motion for summary judgment on the same basis. The trial court granted the motion. This Court reversed, holding that Dr. Hoffman failed to set forth sufficient facts in his answer regarding the insufficiency of service of process defense. The Court stated:

> The [plaintiffs] insist that Dr. Hoffman's answer did not comply with Rule 8.03's requirement that a party "set forth affirmatively facts in short and plain terms relied upon to constitute" that party's affirmative defenses. Tenn. R. Civ. P. 8.03. Although Dr. Hoffman's answer stated that he was challenging service of process "on grounds that the return certifying service of process on [Dr. Hoffman] shows that he was served by the commissioner of insurance through the U.S. mail," the [plaintiffs] allege that it does not comply with Rule 8.03 because it misstates the factual basis for the defense, and does not state that Dr. Hoffman is challenging the attempted personal service on the basis that no one at [Dr. Hoffman's office] was authorized to accept service of process on his behalf.

*Allgood*, 309 S.W.3d at 923. Thus, the plaintiffs argued that the defendant had not set forth specific facts to constitute the defense because the answer not only failed to state the specific facts supporting the defense, but instead asserted other facts that were not pertinent to the defense. Accordingly, the plaintiffs argued that they were not put on reasonable notice of the defendant's defense and that such defense should be deemed waived. The Court of Appeals agreed, relying on the Tennessee Supreme Court case of *Barker v. Heekin Can Co.*, 804 S.W.2d 442 (Tenn. 1991). As explained in *Allgood*:

> In *Barker*, the plaintiff initiated a worker's compensation action against her employer, the Heekin Can Company, for an injury allegedly sustained during the course of her employment. The plaintiff's first summons was returned un-executed, with the following notation by the process server: "no longer in business here; sold out." Between the time of the plaintif''s purported injury and the commencement of her action, Heekin Can sold its Memphis plant to an entity known as Peacher Schwank Plastics. An alias summons was then issued, directed to "Heekin Can Company, a/k/a Pearcher [sic] and Schwank Plastics." The return of service had the following notation: "served process ... by delivering . . . a copy of the summons and a copy of the complaint to . . . Heekin Can Company, a/k/a Pearcher [sic] and Schwank Plastics, by serving: Harold Townsend, Gen. Mgr."
>
> Heekin Can filed an answer and a motion to dismiss in its answer, stating the following grounds: . . . "That there has been an insufficiency of service of process in this cause." The motion included no factual allegations to support th[is] ground[]. Several years later, the defendant filed a motion for summary judgment, alleging that Heekin Can and Peacher Schwank Plastics were separate entities, with their only relationship being that of buyer and seller of the Memphis plant, and therefore, the service made on Peacher Schwank Plastics was insufficient as to Heekin Can. The trial court granted summary judgment in favor of Heekin Can. The plaintiff appealed.
>
> The Tennessee Supreme Court reversed the decision of the trial court, holding that Heekin Can waived the defense of insufficiency of service of process by failing to include "in its motion to dismiss a recitation of those facts, 'in short and plain terms,' upon which it was relying for dismissal" as required by Rule 8.03. It found that the defendant should have stated in the motion to dismiss that Heekin Can and Peacher Schwank

-18-

Plastics were separate entities, that Mr. Townsend did not have authority to accept service of process for Heekin Can, and that Heekin Can no longer did business in Tennessee. The Court explained:

> The reason for such a rule is obvious. As noted in **Goss** [**v. Hutchins**, 751 S.W.2d 821 (Tenn. 1988)], the filing of a "specific negative averment will likely result in a prompt curative amendment by plaintiff," thus preventing the dismissal of an otherwise meritorious claim on purely technical grounds.
>
> **Barker**, 804 S.W.2d at 444.

**Allgood**, 309 S.W.3d at 923–24 (footnotes omitted) (internal citations omitted) (citing **Barker**, 804 S.W.2d at 442–44).

Relying on the precedent set in **Barker**, the **Allgood** Court concluded that the defendant doctor had likewise not set forth sufficient facts to support his insufficiency of service of process defense. The Court of Appeals explained:

> Insufficiency of service of process is an affirmative defense that must be presented in the defendant's answer or in a pre-answer motion. Tenn. R. Civ. P. 12.02(5); see **Eaton**, 2008 WL 4963512, at *3. Although Rule 12 does not contain a specificity requirement, Rule 8 "clearly does." Barker, 804 S.W.2d at 444. Rule 8.03 requires that a party "set forth affirmatively facts in short and plain terms relied upon to constitute . . . an affirmative defense." Tenn. R. Civ. P. 8.03. Failure to comply with Rule 8.03 will result in a waiver of the defense. **Barker**, 804 S.W.2d at 444.
>
> Like the defendant in **Barker**, Dr. Hoffman sought dismissal of the complaint in his answer, asserting the defense of insufficiency of service of process. Unlike the defendant in Barker, Dr. Hoffman included in his answer facts that were known to him at the time.
>
> Dr. Hoffman argues that he satisfied Rule 8.03 because the facts in his answer provided the Allgoods with the same notice that they would have received had he pled the facts that

he later discovered, namely "that a possible defect in the manner of service of process exists." We respectfully disagree. This type of general notice was clearly found inadequate by the Supreme Court in Barker. If simply putting the plaintiff on notice that there may be a problem with service of process were enough to satisfy Rule 8.03, then the Barker Court would not have found the defense to have been waived, because the defendant in Barker stated in its answer "[t]hat there has been an insufficiency of service of process in this cause." [*Barker*, 804 S.W.2d] at 443. *Barker* clearly holds that mere notice of a possible problem is insufficient to satisfy Rule 8.03. Rather, Rule 8.03 requires that a defendant state the facts that support the defense.

* * *

Dr. Hoffman rightly argues that he cannot be expected to include facts in his answer that were unknown to him. However, when the return of service was filed, Dr. Hoffman became aware that the facts alleged in his answer to support his defense were not accurate. As in *Barker*, this fact was "peculiarly within the knowledge of" Dr. Hoffman. [*Barker*, 804 S.W.2d] at 444. Despite this, there was no attempt by Dr. Hoffman to amend his answer or otherwise correct the misimpression created. Indeed, the misstated facts in Dr. Hoffman's answer were, from the Plaintiffs' perspective, worse than having stated no facts at all; when considered with Dr. Hoffman's failure to address insufficiency of service of process in response to the Allgoods' interrogatory, this could have led the Plaintiffs to conclude that the original service of process on Dr. Hoffman was in fact effective.

*Allgood*, 309 S.W.3d at 925. Thus, the *Allgood* opinion stands for the proposition that in order to avoid waiving an affirmative defense, the defendant must affirmatively state, with some specificity, the facts relied upon to support that defense. Accordingly, we turn to the record to determine whether Dr. Kennedy waived her statute of limitations defense by failing to plead sufficient facts to support it.

As previously discussed, the first time the statute of limitations defense was raised in this case was in Dr. Kennedy's August 24, 2004 Motion to Dismiss, alleging, *inter alia*,

-20-

failure to state a claim upon which relief can be granted. We agree with Ms. Young that there are no facts to support the defense included in this motion. Instead, the Motion to Dismiss merely recites that "the case is time-barred by the applicable statute of limitations." However, on April 22, 2005, Dr. Kennedy filed a Memorandum in support of her Motion to Dismiss. Ms. Young cites no law in which the facts supporting a statute of limitations defense were held insufficient simply for being included in a Memorandum filed subsequent to the motion or answer alleging the defense. Additionally, although this Memorandum was filed nearly a year after the filing of the Motion to Dismiss, no pleadings were filed in the interim in the trial court. Thus, between the filing of the Motion to Dismiss and the Memorandum in support, Ms. Young took absolutely no action in the trial court. Accordingly, Ms. Young cannot show that she was prejudiced by the delay. Thus, we will consider whether the facts contained in the Memorandum are sufficient to meet the requirements under Rule 8.03.

The Memorandum contains a timeline of the facts alleged in Ms. Young's Complaint, which facts Dr. Kennedy argues support her statute of limitations defense. Specifically, the Memorandum states:

> A timeline of significant events is as follows:
>
> 1. April 3, 2001 - Dr. Kennedy performed a bronchoscopy on Mr. Young.
> 2. May 9, 2001 - According to [Ms. Young's] complaint, Mr. Young's condition began to deteriorate and Dr. Kennedy was allegedly called. [Ms. Young] alleges in her complaint that Dr. Kennedy did not respond. There are no allegations in either Complaint that Dr. Kennedy saw Mr. Young after this date.
> 3. June 6, 2001 - Mr. Young slipped into a coma, according to [Ms. Young's] complaint.
> 4. June 12, 2001- Mr. Young died.
> 5. June 11, 2002 - [Ms. Young] files her original complaint.
>
>         \*     \*     \*
>
> [Tennessee Code Annotated Section] 29-26-116 provides the statute of limitations in a malpractice action shall be one year. The statute further provides that, in the event the alleged injury is not discovered within the one year period, the period of limitations shall be one year from the date of discovery.

-21-

In the present case, the plaintiff alleges that Dr. Kennedy performed a bronchoscopy on Mr. Young on April 3, 2001. There are no allegations of negligence as to Dr. Kennedy after May 9, 2001. However, the plaintiff filed her original Complaint on June 11, 2002, over one year after the last act of alleged negligence.

Despite these facts, Ms. Young argues that Dr. Kennedy failed to meet her burden to plead affirmative facts in support of her statute of limitations defense. Specifically, Ms. Young argues that Dr. Kennedy failed to include additional facts known to her at the time of filing the Motion to Dismiss, including facts regarding the JCAHO complaint and the Tennessee Department of Health investigation. Without setting forth some facts outside the initial Complaint, Ms. Young argues, Dr. Kennedy has failed to set forth "affirmative facts to support a statute of limitations defense."

We respectfully disagree. Essentially, Ms. Young argues that Dr. Kennedy has not asserted any "affirmative facts" to support a statute of limitations defense because Dr. Kennedy has asserted no facts that were not contained in the Complaint. According to Ms. Young, the only facts that are affirmative are those that have not yet been pleaded by the plaintiff. First, we note that Ms. Young misapprehends the language of Rule 8.03. Ms. Young contends that Rule 8.03 requires the defendant to set forth "affirmative facts," i.e. as-yet-unpleaded or unknown facts. However, this reading is not supported by the plain language of the Rule. Instead, Rule 8.03 merely requires that the defendant set forth the facts supporting the defense "affirmatively." While subtle, this is an important distinction. From our reading of the plain language of Rule 8.03, the term "affirmatively" describes not the facts that must be pleaded, but the defendant's action in pleading them. Indeed, the term "affirmative" is defined as "that which declares positively." *Black's Law Dictionary* 55 (5th ed. 1979). Accordingly, Rule 8.03 does not require a defendant to set forth previously unpleaded facts to support his or her defense, but instead requires that the defendant plead facts supporting his or her defense in an affirmative, or positive, manner. Therefore, while Rule 8.03 requires Dr. Kennedy to set forth the facts that support her defense affirmatively, nothing in Rule 8.03 requires that these facts come from outside the Complaint. Specifically, in this case, the Complaint contains detailed allegations regarding the dates of all acts by Dr. Kennedy alleged to be negligent. Dr. Kennedy's Motion to Dismiss likewise contains facts, positively set forth, that if undisputed, would support a finding that Ms. Young failed to file her initial Complaint within the applicable statute of limitations. Further, the allegations contained in Dr. Kennedy's Memorandum are facts rather than mere "conclusory allegations." *See Pratcher*, 2013 WL 3270836, at *7. Thus, they are sufficient to plead a statute of limitations defense.

Further, we fail to comprehend how the omission of the facts regarding the JCAHO

-22-

Complaint and the Tennessee Department of Health investigation prejudiced Ms. Young in responding to Dr. Kennedy's defense, nor do we discern how the facts that were pleaded failed to sufficiently notify Ms. Young of the circumstances underlying Dr. Kennedy's statute of limitations defense. While the Tennessee Supreme Court has held that Rule 8.03 contains a specificity pleading requirement, nothing in the Rule or in Tennessee jurisprudence suggests that the defendant must plead every fact known to him or her that could possibly be considered in their statute of limitations defense. Indeed, despite the specificity requirement contained in Rule 8.03, Tennessee continues to follow a notice pleading scheme. As explained by the Tennessee Supreme Court in *George v. Building Materials Corp.*, 44 S.W.3d 481, 487 (Tenn. 2001):

> Rule 8.03 of the Tennessee Rules of Civil Procedure requires that a statute of limitations defense be specifically pleaded. *See also **Sands v. State***, 903 S.W.2d 297, 299 (Tenn.1995); ***Travelers Ins. Co. v. Austin***, 521 S.W.2d 783, 785 (Tenn. 1975). Generally, failure to do so results in a waiver of the defense. Tenn. R. Civ. P. 12.08; *see also **Denny v. Webb***, 199 Tenn. 39, 44–45, 281 S.W.2d 698, 701 (1955); ***Steed Realty v. Oveisi***, 823 S.W.2d 195, 197 (Tenn. Ct. App. 1991). It is well settled, however, that if the opposing party is given fair notice of the defense and an opportunity to rebut it, failure to specifically plead a statute of limitations defense will not result in a waiver. ***Sands***, 903 S.W.2d at 299. "In other words, the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense." ***Id.***

*George*, 44 S.W.3d at 486–87. This Court, in ***Amber Brazilian Export Resources, Inc. v. Crown Laboratories***, Inc., No. E2011-01616-COA-R3-CV, 2012 WL 982969 (Tenn. Ct. App. March 21, 2012) (perm. app. denied Aug. 15, 2012), noted that "the key question is generally whether the opposing party had sufficient notice of the defense to attempt to rebut it." ***Id.*** at *3 (citing ***George***, 44 S.W.3d at 486–87). Instead of requiring the defendant to plead every fact known to it that could possibly support its defense, "[t]he specific pleading requirements of Tenn. R. Civ. P. 8.03 are designed to prevent trial by ambush[.]" ***George***, 44 S.W.3d at 487.

There is no doubt in this case that Ms. Young was given sufficient notice of Dr. Kennedy's statute of limitations defense. Dr. Kennedy pleaded specific facts that supported her argument that any negligence on the part of Dr. Kennedy occurred, and was known to Ms. Young, more than one year prior to the commencement of this action. Specifically, Dr.

Kennedy noted that Ms. Young alleged no action on her part after May 9, 2001 that could be the basis of a finding of liability against Dr. Kennedy. Based on these facts, Dr. Kennedy argued that the statute of limitations was triggered on or around this date, and Ms. Young's Complaint, which was filed more than one year from May 9, 2001, was untimely. These are essentially the same facts that were relied upon in Dr. Kennedy's later Motion for Summary Judgment, which was ultimately granted by the trial court. Accordingly, we decline to hold that Dr. Kennedy waived her statute of limitations defense by failing to include other facts that were not included in Ms. Young's Complaint.

In addition, Dr. Kennedy pleaded the statute of limitations defense in a timely manner and did not fail to prosecute the defense, as argued by Ms. Young. Ms. Young relies on the Court of Appeals' opinion in *Spring Cress Realty, L.L.C. v. Brown*, No. E2010-00615-COA-R3-CV, 2011 WL 1872712 (Tenn. Ct. App. May 16, 2011). In *Spring Cress*, the defendant raised the defense of the statute of limitations without including any factual allegations to support the defense. *Id.* at *5. The Court concluded that the defendant waived the defense by pleading it in "a conclusory, abstract sense without alleging any facts." *Id.* The Court went on, however, in *dicta*, to hold that even had the statute of limitations defense been properly pleaded, then the defendant failed to prosecute the defense because the motion was never scheduled for hearing or otherwise brought to the attention of the trial court. *Id.* at *1, 5–6. In addition, the defendant later filed an answer and a counterclaim in the case, in which he failed to raise the statute of limitations defense. *Id.* at *1–2. The case ultimately resulted in a bench trial in which the plaintiff was awarded damages. *Id.* at *2–5. The defendant then raised the expiration of the statute of limitations in his appellate brief. *Id.* at *5. The situation in *Spring Cress* is not analogous to this case. In this case, Dr. Kennedy filed not only two Motions to Dismiss, but also an Answer, and a Motion for Summary Judgment, all alleging that Ms. Young's Complaint was filed after the expiration of the statute of limitations. The record is clear that this defense was brought to the trial court's attention because the trial court eventually granted Dr. Kennedy's Motion for Summary Judgment, sustaining her statute of limitations defense. Under these circumstances, we cannot conclude that Dr. Kennedy failed to prosecute her defense. Accordingly, the trial court's ruling that Dr. Kennedy sufficiently pleaded her statute of limitations defense is affirmed.

### B. Summary Judgment

Ms. Young's final issue concerns the trial court's grant of summary judgment to Dr. Kennedy, and by extension, Methodist,[7] on the basis of the expiration of the statute of

---

[7] As previously discussed, the trial court granted summary judgment to Dr. Kennedy on the basis of the expiration of the statute of limitations. After granting summary judgment to Dr. Kennedy, the trial court

(continued...)

-24-

limitations. Because this case was adjudicated by summary judgment, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." **Mathews Partners, L.L.C. v. Lemme**, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing **Hunter v. Brown**, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." **Id**. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." **Id**. at 5 (citing **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." **Martin v. Norfolk S. Ry. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. **Stovall v. Clarke**, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is

---

[7](...continued)
ruled that Ms. Young's only cause of action against Methodist was for vicarious liability for the acts or omissions of Dr. Kennedy. The trial court further ruled that because no liability could attach to Dr. Kennedy due to the expiration of the statute of limitations, no liability could attach to Methodist for Dr. Kennedy's alleged acts or omissions. The trial court, therefore, granted summary judgment to Methodist, as well. Ms. Young does not argue on appeal that the trial court erred in concluding that Methodist's liability was based on the liability of Dr. Kennedy. Instead, Ms. Young only argues that the trial court erred in granting summary judgment to Dr. Kennedy on the basis of the statute of limitations, thereby also requiring summary judgment be granted to Methodist.

predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at \*3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at \*3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

***Id***. at 24–25.

As previously discussed, Ms. Young filed this action on June 11, 2001. Although the initial case was later non-suited and re-filed pursuant to the Saving Statute,[8] the dispositive question in this case is whether factual disputes exist regarding whether the initial suit was filed within the applicable statute of limitations. Only if the initial suit was filed within the applicable statute of limitations will the Saving Statute operate to revive the claim. *See* Tenn.

---

[8] Tennessee Code Annotated Section 28-1-105(a), commonly referred to as the Saving Statute, provides:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Code Ann. § 28-1-105(a) (requiring that the original action be "commenced within the time limited by a rule or statute of limitation"). Accordingly, we turn to consider the applicable statute of limitations as applied to the facts in the record.

Because this is a medical malpractice action, the applicable statute of limitations is set forth in Tennessee Code Annotated Section 29-26-116. Section 29-26-116 provides, in pertinent part:

> (a)(1) The statute of limitations in health care liability[9] actions shall be one (1) year as set forth in § 28-3-104.[10]
> (2) In the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.

As stated in subsection (2), however, the medical malpractice statute of limitations is subject to the discovery rule. Our Supreme Court recently explained the discovery rule in medical malpractice actions:

> In *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974), this Court adopted the majority rule among the states that a medical malpractice action does not accrue until "the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." The Court concluded that no rule of law should require "that a plaintiff file suit prior to knowledge of his injury or . . . sue to vindicate a nonexistent wrong, at a time when [the] injury is unknown and unknowable." *Id.* at 515; *see also Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982) ("The so-called 'discovery doctrine' was fashioned to alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong.").

---

[9] In 2012, the Tennessee General Assembly saw fit to amend sections of the Medical Malpractice Act to change the term used to describe actions against doctors and hospitals for professional negligence from "medical malpractice" to "health care liability." *See* 2012 Tenn. Pub. Acts, ch. 798, § 1–59. Because this case was filed prior to the amendments, we will refer to this action by its previous title. The 2012 amendment to replace "medical malpractice" with "health care liability" had no substantive effect on the operation of the statute to this case.

[10] Tennessee Code Annotated Section 28-3-104 places a one-year statute of limitations on several different causes of action, including for "[a]ctions for . . . injuries to the person[.]"

-27-

One year after our opinion in *Teeters*, the General Assembly codified the discovery rule as part of the Medical Malpractice Review Board and Claims Act of 1975, ch. 299, § 15(a), 1975 Tenn. Pub. Acts 662, 671, which instituted both the one-year statute of limitations and a three-year statute of repose in medical malpractice actions. The language enacted in 1975 is nearly identical to the current form of the discovery rule: "In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). The application of this seemingly innocuous provision has been the focus of voluminous litigation in Tennessee since its enactment.

*Sherrill v. Souder*, 325 S.W.3d 584, 592–93 (Tenn. 2010).

As a result of the "voluminous litigation" on this issue, our courts have "stake[d] out a sensible middle ground that protects both those making claims, by ensuring that the period during which a malpractice suit can be filed does not expire before discovery, and those against whom claims are made, by preventing the prosecution of stale medical malpractice claims." *Sherrill*, 325 S.W.3d at 595. As such, our courts apply the following rule to determine when a medical malpractice cause of action has accrued:

> [A] medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases.

*Id.*

Notice pursuant to the discovery rule may be actual or constructive. In this case, the issue is one of constructive notice. Usually, the determination of when a plaintiff had

constructive knowledge of facts sufficient to put him or her on notice pursuant to the discovery rule "is . . . a question for the trier of fact." ***McIntosh v. Blanton***, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004). However:

> [W]here the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate.

***Schmank v. Sonic Automotive, Inc.***, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008). Indeed, this Court has stated:

> Defenses based on a statute of limitations are particularly amenable to summary judgment motions. *See **Creed v. Valentine***, 967 S.W.2d 325, 327 (Tenn. Ct. App. 1997); ***Allied Sound, Inc. v. Neely***, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995). Most often the facts material to a statute of limitations defense are not in dispute. When the facts and the inferences reasonably drawn from the facts are not disputed, the courts themselves can bring to bear the applicable legal principles to determine whether the moving party is entitled to a judgment as a matter of law.

***Cherry v. Williams***, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000).

Ms. Young contends on appeal that the trial court erred in granting summary judgment to Dr. Kennedy because disputes of material fact exist that prevent the application of summary judgment. As previously discussed, summary judgment is only appropriate if no material factual disputes exist. *See **Evco***, 528 S.W.2d at 24–25. Dr. Kennedy argues, however, that Ms. Young never asserted at the trial level that there were material factual disputes, which precluded summary judgment. Usually, when a litigant fails to raise an issue in the trial court, it is deemed waived on appeal. *See **Powell v. Cmty. Health Sys., Inc.***, 312 S.W.3d 496, 511 (Tenn. 2010). However, on appeals from the grant of summary judgment, we are directed to:
> [M]ake a fresh determination that the requirements of [Rule] 56 [of the Tennessee Rules of Civil Procedure] have been satisfied. ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn. 1997); ***Mason v. Seaton***, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's

favor. ***Doe v. HCA Health Servs.***, Inc., 46 S.W.3d 191, 196 (Tenn. 2001); ***Memphis Hous. Auth. v. Thompson***, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. ***Byrd v. Hall***, 847 S.W.2d at 214; ***Rutherford v. Polar Tank Trailer, Inc.***, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

***Jeffries v. Tennessee Dept. of Correction***, 108 S.W.3d 862, 869 (Tenn. Ct. App. 2002). Accordingly, we will consider whether there are material factual disputes that preclude summary judgment in this case.

Turning to the record, it is undisputed that any negligence on the part of Dr. Kennedy occurred prior to June 6, 2001, when Mr. Young slipped into a coma. Indeed, as argued by Dr. Kennedy in her Motion to Dismiss, Ms. Young alleged no actions on the part of Dr. Kennedy after June 6, 2001. In addition, Ms. Young did not allege any negligence on the part of Dr. Kennedy after June 6, 2001 in either her JCAHO Complaint or the Tennessee Department of Health interview. Accordingly, it is undisputed that the date of Mr. Young's injury as a result of Dr. Kennedy's alleged negligence was, at latest, June 6, 2001. The question, however, is not when the injury occurred, but when the relevant person became sufficiently aware of the injury and the wrongful conduct of the defendant to trigger the running of the statute of limitations.

As a point of practice, we note that in a wrongful death medical malpractice action, we will "consider [] whether the plaintiff bringing the suit, rather than the [d]ecedent, had notice of an actionable wrong." ***Holliman v. McGrew***, 343 S.W.3d 68 (Tenn. Ct. App. 2009) (citing ***Hathaway v. Middle Tennessee Anesthesiology, P.C.***, 724 S.W.2d 355, 361 (Tenn. Ct. App. 1986) (Koch, J., concurring) ("A deceased's personal representative is charged with the same duty of discovery that would have been imposed on the deceased had he survived."); ***Gosnell v. Ashland Chem. Co.***, 674 S.W.2d 737, 739–40 (Tenn. Ct. App. 1984) (imposing a duty of reasonable care and diligence on the plaintiff to discover whether husband's death was actionable)). The question, then, is when Ms. Young discovered, or in the exercise of reasonable care should have discovered, that Mr. Young had been injured as a result of Dr. Kennedy's negligence. *See **Sherrill***, 325 S.W.3d at 595. Thus, we will consider the knowledge of Ms. Young for purposes of this appeal.

Ms. Young contends that she did not become aware of Mr. Young's injury as a result of Dr. Kennedy's negligence until after Mr. Young's death on June 12, 2001. Specifically, she

asserts that both Dr. Kennedy and the Methodist staff failed to inform her that Mr. Young was suffering from a hospital staph infection, which was allegedly caused by inadequate hygiene in the hospital. Instead, Ms. Young contends that Dr. Kennedy informed her that Mr. Young's worsening condition was due to the reoccurrence of his lymphoma, rather than an infection. First, we note that the Tennessee Supreme Court has specifically held that: "Neither actual knowledge of a breach of the relevant legal standard **nor diagnosis of the injury by another medical professional** is a prerequisite to the accrual of a medical malpractice cause of action." *Sherrill*, 325 S.W.3d at 595 (emphasis added). In addition, "mere ignorance . . . is not sufficient to toll the running of the statute of limitations." *Soldano v. Ownes-Corning Fiberglass Corp.*, 696 S.W.2d 887, 889 (Tenn. 1985). "The plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998) (citing *Wyatt v. A-Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995)). Similarly, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," *Stanbury v. Bacardi*, 953 S.W.2d 671, 672 (Tenn. 1997), or that "the injury constitute[d] a breach of the appropriate legal standard." *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). Accordingly, the fact that Ms. Young was not informed of Mr. Young's actual diagnosis until after his death is not fatal to Dr. Kennedy's claim that Ms. Young discovered the injury prior to Mr. Young's death.

Regardless, Ms. Young claims that the facts are disputed that she had sufficient knowledge to put her on notice of Mr. Young's injury and that the injury was caused by the negligence of Dr. Kennedy prior to Mr. Young's death. This Court was recently faced with a similar situation in *Holliman v. McGrew*, 343 S.W.3d 68 (Tenn. Ct. App. 2009). In *Holliman*, the defendants raised the expiration of the statute of limitations as a defense in their answer. *Id.* at 70. The plaintiffs, like Ms. Young in this case, contended that they were not on notice of any alleged injury until the decedent's death on March 3, 2003. *Id.* at 71. The trial court disagreed with the plaintiffs and granted summary judgment in favor the defendant doctor. *Id.* at 72. The Court of Appeals affirmed summary judgment, concluding that the plaintiffs were on notice of the injury and that the injury may have been caused by the defendant doctor's negligence, at latest, on February 27, 2004. *Id.* at 75. The Court of Appeals first rejected plaintiffs' argument that they could not have known of the decedent's injuries prior to his death, noting: "The date of [d]ecedent's death is the latest, rather than only, date from which the one-year limitation runs." *Id.* at 74 (citing *Johnson v. Metro. Gov't of Nashville & Davidson County*, 665 S.W.2d 717, 718 (Tenn. 1984)). The Court then considered when the plaintiffs had sufficient notice of the wrongful actions of the defendant doctor based on the undisputed evidence in the record. *Holliman*, 343 S.W.3d at 75. According to the record, prior to his death, the decedent informed the plaintiffs that the defendant doctor was "likely a good doctor but in [this] case, he failed to see this reaction to the [Amiodarone medication] until it was too late." The decedent also informed the plaintiffs

that he felt "permanently damaged" as a result of the medication. Finally, on February 27, 2004, the decedent asked the plaintiffs to hold the defendant doctor accountable for his actions. *Id.* The plaintiffs argued that the above information was insufficient because neither the plaintiffs nor the decedent were ever told by another doctor that the defendant doctor had done something wrong. The Court of Appeals rejected this argument, explaining:

> In ***Stanbury v. Bacardi***, 953 S.W.2d 671 (Tenn. 1997), the Court held that "[a]dvice from another health care professional that a claim exists is not a prerequisite to accrual of a medical malpractice cause of action." *Id.* at 678. Here, the plaintiffs were told by other doctors prior to the decedent's death in the hospital that the Decedent's problems were likely caused by the drug Dr. McGrew prescribed. The notice requirement does not mean that the plaintiffs must understand the precise legal details of their claim. Rather, the statute of limitations is tolled "only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry." ***Teeters v. Currey***, 518 S.W.2d 512, 518 (Tenn. 1974) (Harbison, J., concurring).

***Holliman***, 343 S.W.3d at 75. Accordingly, the Court of Appeals concluded that the plaintiffs were on sufficient notice of the wrongful act on February 27, 2003, rather than the date the decedent died.

Ms. Young distinguishes ***Holliman***, however, on the basis of the decedent's statements to his family members that the defendant doctor's use of the drug had caused permanent damage to the decedent. According to Ms. Young, there are no similar facts in the record to support that she or Mr. Young knew that Mr. Young's deteriorating condition was the result of Dr. Kennedy's negligence. We respectfully disagree. First, as previously stated, the question in this case is the knowledge of Ms. Young, rather than the knowledge of Mr. Young. See ***Holliman***, 343 S.W.3d at 75. Accordingly, Mr. Young's lack of knowledge will not be fatal to Dr. Kennedy's statute of limitations defense. Regardless, the record does show that Mr. Young had some knowledge of his injury and that the injury was likely attributable to Dr. Kennedy's negligence. Specifically, Ms. Young testified in her deposition that Mr. Young expressed displeasure with Dr. Kennedy's treatment and indicated that he wanted to be moved to a different hospital prior to slipping into a coma on June 6, 2001. In addition, Ms. Young testified that Mr. Young was afraid to stay at the hospital at night. Accordingly, the undisputed facts in the record show that Mr. Young, like the decedent in ***Holliman***, informed Ms. Young of his fear the treatment offered by Dr. Kennedy was not adequate.

From our review of the record, we conclude that the undisputed facts support the trial court's finding that Ms. Young had sufficient notice that Mr. Young may have suffered an injury due to Dr. Kennedy's negligence, at the latest, on June 6, 2001. With regard to the hospital acquired infection, Ms. Young admits in her deposition that she was aware that Mr. Young had acquired an infection at the time he was readmitted to the Intensive Care Unit on May 9, 2001. Specifically, Ms. Young stated that the fact that he had acquired an infection was obvious from his condition and the fact that Mr. Young was placed in isolation at that time. While there is a dispute regarding when Ms. Young learned that the infection was a hospital acquired staph infection, we must conclude that the undisputed facts in the record support the trial court's finding that Ms. Young's knowledge of the infection would have put a reasonable person on notice that Mr. Young suffered an injury as a result of Dr. Kennedy's alleged negligence. Accordingly, by May 9, 2001, Ms. Young had "facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another," regarding the alleged hospital infection. *See **Sherrill***, 325 S.W.3d at 595.

With regard to Mr. Young's eventual death as a result of Dr. Kennedy's subsequent treatment, the record shows that both Mr. Young and Ms. Young expressed their displeasure with Dr. Kennedy's treatment decisions prior to or on June 6, 2001. Specifically, the notes taken of Ms. Young's Tennessee Department of Health interview, which are undisputed in the record, show that Ms. Young engaged in a confrontation with Dr. Kennedy on June 6, 2001. Dr. Kennedy's notes, which are also undisputed, support that the confrontation occurred on this date. During this confrontation, Ms. Young described her displeasure with Dr. Kennedy's treatment choices, specifically Dr. Kennedy's alleged over-prescription of sedatives and pain medication, which Ms. Young contends caused Mr. Young's blood pressure to drop and eventually led to Mr. Young slipping into a coma. It is the same alleged over-medication that Ms. Young cites in her Complaint as below the standard of care and the proximate cause of Mr. Young's coma and death. Accordingly, Ms. Young was well aware of what she considered to be Mr. Young's injury and that this injury was, as alleged by her, due to Dr. Kennedy's negligence, on June 6, 2001.

Based on the foregoing, we must conclude that the undisputed facts in the record support the trial court's conclusion that the statute of limitations began to run on June 6, 2001, at the latest. Accordingly, Ms. Young's Complaint, which was filed on June 11, 2002, was filed outside the statute of limitations prescribed by Tennessee Code Annotated Section 29-26-116. The trial court's grant of summary judgment to Dr. Kennedy and Methodist is, therefore, affirmed.

## IV. Conclusion

The judgment of the Circuit Court of Shelby County is affirmed. Costs of this appeal

are taxed to Appellant Julia  Young, on behalf of the estate of Cecil C. Young, and her surety.

_____
J. STEVEN STAFFORD, JUDGE