**Ben W. HOOPER II, Executor of the Estate of Finley Noah Holt, Plaintiff-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section,
at Knoxville.

June 19, 1984.

Application for Permission to Appeal to
Supreme Court Denied by
Supreme Court
Oct. 1, 1984.

William O. Shults, Newport, for plaintiff-appellant.

J. William Myers, Newport, for defendant-appellee.

TOMLIN, Judge.

The executor of the estate of Finley Holt, deceased (hereinafter "executor" or "plaintiff") has appealed to this Court from the judgment of the Circuit Court of Cocke County granting the motion for summary judgment of the defendant State Farm Mutual Insurance Company (hereinafter "insurance company") and dismissing the executor's suit. The defendant insured the automobile of the plaintiff's decedent. The policy contained the standard uninsured motorist provisions, with minimum limits. The executor's decedent died from a heart attack some fifteen days following an automobile collision with an uninsured motorist in which he suffered abdominal and chest injuries. The complaint was filed more than one year after the date of this accident. The singular issue presented to this Court on appeal is the contention of the executor, notwithstanding procedural irregularities and the running of the statute of limitations, that the insurance company is liable to the plaintiff's estate on the grounds of equitable estoppel. We are of the opinion that this issue is without merit, and we affirm the action of the trial court.

The basic facts as presented in the pleadings and depositions filed by the parties are not in dispute. The plaintiff's decedent, while operating his automobile, received serious injuries when struck by an uninsured motorist on March 24, 1979. The uninsured motorist clearly crossed the centerline and struck the decedent's automobile head on causing the plaintiff's decedent to suffer severe trauma to the upper abdomen and chest. He was hospitalized for approximately ten days, when he was discharged and allowed to return to his home. Five days following his discharge, on April 8, 1979, the decedent died from a pulmonary embolism. The certificate of death reflected that the embolism was a thrombosis probably due to the trauma sustained in the automobile accident on March 24, 1979. The deceased, who was divorced, had one of his minor children as a passenger in the automobile at the time of the accident. His ex-wife, the mother of the child, had legal custody of the child at that time.

It is uncontradicted that the insurance company carried uninsured motorist coverage on the deceased's automobile. Following some preliminary contacts with the plaintiff, as executor of the estate, a claims representative of the insurance company wrote the following letter to the executor on June 20, 1979:

Re: Finely Holt
   42–4257–222
Dear Mr. Hooper:
Before we can do anything on the claim of Mr. Finley Holt, the following information is needed:

1. Copies of all medical bills.
2. Copies of all medical reports on Mr. Holt's injuries.
3. Copy of death certificate.
4. Copy of funeral bill.
5. Names of each ex-wife and names of each child by each marriage.

Mr. Holt's daughter, Alma Lee Holt, is represented by Terry Hurst. Mr. Hurst is also representing Sharrion Holt, ex-wife of Mr. Holt.

As I have indicated to you, the limits of Mr. Holt's uninsured motorist coverage are $10,000. If the medical reports and death certificate indicate Mr. Holt's death was attributed to the accident, I do not forsee (sic) any problems concluding this claim for the policy limits. However, if his death was not a result of the accident, we would have to evaluate the injury report and make our offer of settlement accordingly.

Very truly yours,
/s/ Ronald H. Dotson
Field Claim Specialist

Almost two years after the insurance company denied the executor's claim on the grounds that the one-year statute of limitations for personal injuries had run, the executor filed this action directly against the insurance company as defendant, asserting that he had taken all the steps necessary to recover under the policy, and that the insurance company owed the deceased's estate the policy limits. Subsequently, the executor filed an amendment to his complaint to enlarge upon his theories of liability. Motions for summary judgment and a combined motion to dismiss were filed both as to the original complaint and to the complaint as amended. Both motions set forth as grounds for dismissal, first, the fact that the complaint showed on its face that it was a suit by an insured directly against the insuror seeking to recover under the uninsured motorist provisions of the automobile policy in contravention of the provisions of the uninsured motorist statute and second, that the complaint showed on its face that the automobile accident from which the decedent's injuries arose took place more than one year preceding the filing of the complaint. Discovery depositions of the executor, an attorney, and the claims specialist for the insurance company who wrote the June 20th letter, were filed in support of and in opposition to the motion for summary judgment.

These depositions included as exhibits the accident report, hospital records, and death certificate pertaining to the injury and subsequent death of Mr. Holt.

In his deposition the defendant's claim representative testified that following the writing of the June 20th letter, he diaried his file on a thirty-day basis, and for five of the next six months he personally telephoned the executor seeking to obtain the specific information requested in the June 20th letter. The executor did not furnish the information requested. After failing to get the information with a letter and five telephone calls, he simply diaried his file for the one-year anniversary of the date of injury.

He further testified that an attorney other than the executor herein represented the ex-wife of the decedent in connection with the personal injury claim of decedent's minor daughter. The defendant's claim representative testified that this claim was settled by the company with the minor's mother some six to nine months following the accident.

The executor telephoned the defendant's representative sometime after March 24, 1980, and before April 8, 1980, stating in essence that he was ready to wind up the deceased's claim. The information requested in the defendant's June 20, 1979 letter was not actually furnished to the company until mid-April, 1980.

## I. PROCEDURAL PROBLEMS.

■ Notwithstanding the fact that a part of the plaintiff's claim is based upon equitable estoppel, this is clearly a suit on behalf of an insured seeking to collect on the uninsured motorist provisions of his policy for personal injuries sustained in an accident involving an uninsured motorist. In accordance with the provisions of Tennessee Code Annotated § 56–7–1206, it is incumbent that suit be instituted against an uninsured motorist, with service thereafter upon the insured's uninsured motorist carrier. A suit directly against the insurance company under these circumstances cannot be brought. *Glover v. Tennessee Farmers Mutual Insurance Co.*, 225 Tenn. 306, 468 S.W.2d 727 (1971). However, notwithstanding this procedural defect, there is a more compelling reason for our affirming the judgment of the trial court.

## II. STATUTE OF LIMITATIONS.

■ Where one suffers personal injuries in an accident and death later occurs, whether directly or indirectly caused by those injuries, the one-year statute of limitations runs from the date of the injury; not from the date of death. *Fowlkes v. Nashville & D.R.R.*, 56 Tenn. 829 (1872); and *Whaley v. Catlett*, 103 Tenn. 347, 53 S.W. 131 (Tenn.1899). The material dates in this case, all uncontradicted, are: (1) March 24, 1979—date of accident; (2) April 8, 1979—date of death; (3) April 7, 1980—telephone call from plaintiff to defendant's representative; and (4) March 22, 1982—date of suit.

■ Notwithstanding the fact that the plaintiff claims equitable estoppel in his complaint, his testimony in no way supports such a claim. The plaintiff bases his claim of equitable estoppel upon the defendant's letter of June 20, 1979. A dissecting of this letter shows that it told the plaintiff this: *"Before we can do anything* on the claim of Mr. Finley Holt, the following *information is needed."* (emphasis supplied). What did the company need? They requested copies of medical bills, medical reports on the decedent's injuries, a death certificate, a funeral bill, names of the deceased's children, and the name of his ex-wife.

What did the letter say as to the posture of the company? *"If* the medical reports and death certificate indicate that Mr. Holt's death was attributed to the accident, *I do not* forsee (sic) *any problems* concluding this claim for the policy limits." (all emphasis supplied). This vital information is what the defendant sought from the executor by five telephone calls and a letter. In honest candor, in his deposition the executor testified to the effect that he did rely on the June 20th letter only to the extent that when "I received the letter I felt it was a routine matter of getting together the items that were listed there." This concept was entirely correct, but what

he failed to do was to "get together" the information "needed" by the insurance company which it had repeatedly sought.

The executor conceded that when he called the insurance company's representative on April 7, 1980, stating that he was ready to wind up the case, he assumed that the statute of limitations would run on April 8th, rather than on March 24th. He was under the impression that he was calling within the one year, and that notwithstanding the June 20th letter, he was still conscious of the statute of limitations, which he thought would run on April 8, 1980. While most unfortunate, it is clear to this Court that due to the press of other business and legislative matters, as testified to by plaintiff, he erroneously assumed that the statute of limitations ran on April 8, 1980, rather than on March 24, 1980.

While the gathering of the data requested by the company in the June 20th letter was a routine matter, the opening paragraph of that letter put the executor on notice that nothing could be done on the claim of his decedent until this information was furnished. It was not furnished, in fact, until mid-April, 1980. The clincher, insofar as testimony of the executor is concerned, that no controverted issue of material fact pertaining to equitable estoppel existed is borne out by this single question and answer in his deposition:

Q. But even though you had this letter of June 20, 1979, from Ron Dotson, you were still conscious of a Statute of Limitations date which you thought to be April 8th, 1979, and which you wanted the matter concluded before that time or you would file suit?

A. That's right.

The judgment of the trial court granting summary judgment for the defendant is affirmed. Costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

NEARNS, P.J. (W.S.), and CRAWFORD, J., concur.