IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2009 Session

## MARK HOLLIMAN, ET AL. v. FRANK MCGREW, M. D., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001500-05-1     John R. McCarroll, Jr.,Judge**

───────────

**No. W2008-00907-COA-R3-CV - Filed February 5, 2009**

───────────

This is a wrongful death action brought under a theory of medical malpractice. The trial court granted Defendants' motion for summary judgment, finding that Plaintiffs filed their complaint after the one-year statute of limitations had expired. After careful review, we find that Plaintiffs had notice of their claim no later than February 27, 2003, and their lawsuit was not timely filed. The ruling of the trial court is affirmed.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Mark Ledbetter, Bruce D. Brooke, Memphis, TN, for Appellants, Mark Holliman, Sharon Woodson, Michelle Purser, Michael Holliman and Charles Holliman, Jr.

Jerry E. Mitchell, Edd L. Peyton, Memphis, TN, for Appellees, Frank McGrew, M.D., and The Stern Cardiovascular Center, P.A.

### OPINION

Background

In December 2002, Dr. Frank McGrew, a licensed physician and cardiologist, diagnosed Charles Holliman ("Decedent") with paroxysmal atrial fibrillation. For treatment, Dr. McGrew prescribed the drug Amiodarone, which was only approved for the treatment of ventricular fibrillation. Decedent's condition, however, did not improve and he was admitted to Saint Francis Hospital on February 10, 2003. Shortly thereafter, Decedent developed pneumonitis, a known adverse reaction to Amiodarone. Decedent's condition deteriorated over the next month, and he died on March 6, 2003.

On March 3, 2004, Mark Holliman, Sharon Woodson, Michelle Purser, Michael Holliman and Charles Holliman, Jr. (collectively, "Plaintiffs), as the "heirs/beneficiaries and former personal representative of the Decedent," brought a wrongful death action in Shelby County General Sessions Court. The Complaint named Dr. McGrew and his employer, the Stern Cardiovascular Center as defendants. The Complaint alleged that Dr. McGrew committed medical malpractice which ultimately caused Decedent's death. Plaintiffs subsequently took a voluntary nonsuit and filed an identical action in Shelby County Circuit Court on March 17, 2005.

The Defendants raised the one-year statute of limitations as an affirmative defense and filed a motion for summary judgment. In support of the motion, Defendants pointed to portions of Plaintiffs' depositions in which Plaintiffs recounted conversations with the Decedent about his condition. Defendants also attached Plaintiffs' family journal, which had been kept by both Decedent and Plaintiffs. The journal and depositions of Michael Holliman, Michelle Purser, Mark Holliman, and Charles Holliman, Jr. were filed as exhibits to the motion for summary judgment.

In her deposition, Michelle Purser testified that on February 24, 2003, the Decedent stated that "Dr. McGrew was likely a good doctor but in [his] case he failed to see [the] reaction to the [medication] until it was too late." On February 27, 2003, the Decedent told Michael Holliman that he had been permanently damaged as a result of the medication. On the same day, Decedent made the following statement to Michael Holliman:

> I want you to hold Dr. McGrew accountable for what he has done. I trusted him and he dropped the ball and I want to make sure that you hold Dr. McGrew accountable so that he pays attention so that this doesn't happen anymore.

Dr. Mark Holliman testified that on February 24, 2003, Decedent stated that "he was really disappointed in a lot of things, but he was disappointed most with the knowledge that he had by then that this drug had caused this problem." Finally, sometime prior to February 23, 2003, the Decedent himself wrote in the journal: "This is all from the heart drug...I may have permanent heart damage."

Defendants contended that these statements showed that the Plaintiffs had knowledge of a potential cause of action against Dr. McGrew no later than February 24, 2003. Accordingly, Defendants argued that Plaintiffs cause of action, initially filed on March 3, 2004, was barred by the one-year statute of limitations for medical malpractice actions. Plaintiffs first responded that the statements relied on by the Defendants were inadmissible under Tenn. Code Ann. § 24-1-203, commonly known as the Dead Man's Statute. Second, Plaintiffs argue that the deposition statements, if admissible, did not give Plaintiffs sufficient notice to trigger the one-year statute of limitations.

The trial court admitted the deposition testimony and the family journal over Plaintiffs' objection. Considering that evidence along with the remainder of the record, the trial court granted Defendants' motion. In the final order granting summary judgment, the trial court stated the legal grounds for its ruling:

From the aforesaid journal prepared contemporaneously with the hospitalization of the deceased, the "recap" for February 2003 contains the entry on the 12ᵗʰ of the month that "Dr. Posey discussed the possibility of complication with Amiodarone Rx. Was going to check with cardiologist." The subsequent entry on February 15 indicates that the patient "took last dose of Amiodarone." Finally the entry dated "Tuesday evening, 2/24/03" contains the entry as follows:

Dad talked to me & Kelly about getting Dr. McGrew off his case. Dad said Dr. McGrew was likely a good doctor but in dad's case he failed to see this reaction to the Rx until it was too late. (Dad was pretty upset while talking about Dr. McGrew.) Dad doesn't want Dr. McGrew in the room any more. He said to get all of his records from his office because "I paid for them" Dad said. I plan to talk to Dr. Posey later tonight about this....

The trial court concluded that "by at least February 24, 2003 the patient and his family had sufficient understanding of a potential claim against the defendants, and that accordingly the one year statute of limitations began to run at that time."

Plaintiffs appeal and raise two issues, as stated in their brief, for review:

1) Whether the trial court erred by granting summary judgment in favor of defendants (doctor and clinic) by holding that the professional medical negligence claim was barred by the one-year statute of limitations which allegedly began to run.

2) Whether the trial court properly granted summary judgment to defendants' denying plaintiffs' claims by accepting evidence in contravention of the Tennessee Dead Man's Statute.


Standard of Review

The standard of review for a trial court's grant of summary judgment is de novo with no presumption of correctness. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the burden of showing that its motion satisfies these requirements. *Godfrey*, 90 S.W.3d at 695. When considering a motion for summary judgment, "the court is to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

Dead Man's Statute

Plaintiffs first challenge the admissibility of their own testimony as it concerned conversations with the Decedent. The statements were recorded by the plaintiffs in a family journal

and subsequently recounted by the plaintiffs during discovery depositions taken by Defendants. Plaintiffs' sole objection to the use of the testimony is that it is barred by Tennessee Code Annotated § 24-1-203, commonly known as the Dead Man's Statute. Plaintiffs correctly assert that the facts offered as support for a summary judgment motion must be admissible. Tenn R. Civ. P. 56.06. *Perlberg v. Brencor Asset Mgmt., Inc.*, 63 S.W.3d 390, 396-97 (Tenn. Ct. App. 2001) (citing *Byrd*, 847 S.W.2d at 215).

Under Tenn. R. Evid. 601, "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." The Dead Man's Statute is one exception to the presumption of competence:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24-1-203. A witness does not become wholly incompetent to testify when the statute applies, but the statute does limit the subjects a witness can address. The purpose of the statute is "to prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of his executor's version of the transaction or statement." *McDonald v. Allen*, 67 Tenn. 446, 448 (1874). Because it is an exception to the general rule, the statute must be strictly construed against the exclusion of testimony and in favor of its admission. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 230-31 (Tenn. Ct. App. 1976).

The first question is whether the statute can apply in an action between the parties before us. The statute only applies to "actions..by or against executors, administrators, or guardians, in which judgments may be rendered for or against them." Tenn. Code Ann. § 24-1-203. In *Newark Ins. Co. v. Seyfert*, 392 S.W.2d 336 (Tenn. Ct. App. 1965), the plaintiff, as widow and executrix of her husband, sought recovery under the Decedent's life insurance policy. *Id*. at 345. The court found that the plaintiff was not prohibited by the statute from testifying to conversations she had with the Decedent:

> Since in this case the recovery would not go to the estate but to statutorily designated beneficiaries, and the judgment would not be for or against [the plaintiff] as personal representative, her interest as such being nominal, the estate having no interest whatsoever in the res of the action, the insurance proceeds, we are of opinion the statute does not apply.

*Id*. at 345-46. In another similar case, the court found that the statute "does not comprehend a case wherein no judgment could be rendered either for or against the one called upon to testify, even

though a judgment might be rendered for or against the personal representative." ***Kurn v. Weaver***, 161 S.W.2d 1005, 1021 (Tenn. Ct. App. 1940). In ***Winston v. Roe***, 246 F.Supp. 246 (E.D. Tenn. 1965), however, the court found that the statute could apply in a wrongful death action where the plaintiff acts as the Decedent's administrator or personal representative. Id. at 250.

In a wrongful death action, the statutory beneficiary is the real party in interest, and neither the claim nor the recovery becomes a part of the estate of the deceased. ***Memphis St. Ry. Co. v. Cooper***, 313 S.W.2d 444, 448 (Tenn. 1958). Although not required, an administrator or personal representative may institute a wrongful death action. Tenn. Code Ann. § 20-5-107; ***Johnson v. Metro Gov't of Nashville & Davidson County***, 665 S.W.2d 717, 719 (Tenn. 1984). In the present case, it is not precisely clear in which capacity the plaintiffs brought this suit. Accordingly, we will assume, as the parties and trial court did, that the Dead Man's Statute is applicable in the action between these particular parties.

The relevant statements come from depositions taken by defendants during discovery. The act of taking a discovery deposition, however, "does not...render competent evidence otherwise incompetent under Tenn. Code Ann. § 24-1-203." ***Ingram v. Phillips***, 684 S.W.2d 954, 958 (Tenn. Ct. App. 1984). Likewise, the statute may exclude diaries or memoranda kept by a party concerning transactions with the Decedent. ***Nance v. Callender***, 51 S.W. 1025, 1029 (Tenn. Ch. App. 1898). Here, however, the Plaintiffs were asked to testify about their conversations with the Decedent by the Defendants–the opposite party. Therefore, the testimony is admissible as the Plaintiffs were "called to testify...by the opposite party." Tenn. Code Ann. § 24-1-203; *see* ***Ralls v. Love***, No. 01-A-01-9210-CH00398, 1993 WL 49588, at * 3 (Tenn. Ct. App. Feb. 26, 1993). Finally, the statute seeks to exclude interested parties from giving self-serving accounts of their conversations with the deceased. *See* ***In re Estate of Marks***, 187 S.W.3d 21, 28 n.2 (Tenn. Ct. App. 2005). Here, the Plaintiffs were not deprived of the Decedent's version of the events. The statute aims to protect representatives from attacks by other parties; it does not permit representatives to avoid the consequences of their own damaging testimony.

Therefore, we agree with the trial court's finding that the Plaintiffs' depositions and the family journal were admissible.

Discovery of the Cause of Action

Next, Plaintiffs assert that the trial court erred in finding their claim barred by the statute of limitations. The Tennessee legislature has not adopted a statute of limitations specifically for wrongful death actions. Courts, however, have applied the one-year limitation on actions for personal injuries. Tenn. Code Ann. § 28-3-104; ***Burk v. RHA/Sullivan, Inc.***, 220 S.W.3d 896, 900 (Tenn. Ct. App. 2006); ***Hathaway v. Middle Tennessee Anesthesiology***, P.C., 724 S.W.2d 355, 356 (Tenn. Ct. App. 1986). The statute of limitations for medical malpractice is also one year, but "[i]n the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery. Tenn. Code Ann. § 29-26-116(a)(2).

-5-

Under this discovery rule, the statute of limitations begins to run when the patient "discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the patient's] injuries; and (2) the identity of the defendant who breached the duty." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998) (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997)). The plaintiff, however, "is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known." *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995). Instead, "the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Shadrick*, 963 S.W.2d at 733. Generally, the trier of fact has the role of determining when a reasonable person should know that an actionable wrong exists. *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004).

Plaintiffs first contend that the one-year statute of limitations could not begin to run until March 6, 2003, the date of Decedent's death. The wrongful death statute, however, does not create a new right of action for the beneficiaries; it only preserves the Decedent's right of action. *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990). Therefore, the statute may begin to run on the date of the Decedent's injury rather than the date of death. *Hooper v. State Farm Mut. Auto Ins. Co.*, 682 S.W.2d 505, 507 (Tenn. Ct. App. 1984). The date of Decedent's death is the latest, rather than only, date from which the one-year limitation runs. *Johnson v. Metro. Gov't of Nashville & Davidson County*, 665 S.W.2d 717, 718 (Tenn. 1984).

In a wrongful death action premised on medical malpractice, we must therefore determine if the discovery rule tolls the statute of limitations. Although the right of action belongs to the Decedent, we have considered whether the plaintiff bringing the suit, rather than the Decedent, had notice of an actionable wrong. *Burk*, 220 S.W.3d at 902; *see also*, *Hathaway*, 724 S.W.2d at 361 (Koch, J., concurring) ("A deceased's personal representative is charged with the same duty of discovery that would have been imposed on the deceased had he survived."); *Gosnell v. Ashland Chem. Co.*, 724 S.W.2d 737, 739-40 (Tenn. Ct. App. 1984) (imposing a duty of reasonable care and diligence on the plaintiff to discover whether husband's death was actionable). In the present case, the plaintiffs became aware of the their father's health problems at approximately the same time he did.

At this stage, the relevant question is whether plaintiffs had "sufficient information" to put them on notice as a matter of law. *Roe v. Jefferson*, 875 S.W.2d 653, 658 (Tenn. 1994). Turning to the present case, we find that the Decedent told plaintiffs on February 24, 2003 that "Dr. McGrew was likely a good doctor but in [this] case, he failed to see this reaction to the [Amiodarone medication] until it was too late." The Decedent also informed the plaintiffs that he felt "permanently damaged" as a result of the medication. Finally, on February 27, 2003, the Decedent told the plaintiffs to "hold Dr. McGrew accountable for what he has done so that he pays attention so that this doesn't happen anymore." Considering these facts, we agree with the trial court's conclusion that Plaintiffs were sufficiently aware of a potential cause of action no later than February 27, 2003. The Decedent's statements to the Plaintiffs reveal that they were aware of the injury, the

cause, and the tortfeasor. When the Plaintiffs received this information, the statute of limitations began to run.

Plaintiffs now contend that this information was insufficient to trigger notice because neither the plaintiffs nor the Decedent were ever told by another doctor that Dr. McGrew did something wrong. In *Stanbury v. Bacardi*, 953 S.W.2d 671 (Tenn. 1997), the Court held that "[a]dvice from another health care professional that a claim exists is not a prerequisite to accrual of a medical malpractice cause of action." *Id*. at 678. Here, the plaintiffs were told by other doctors prior to the decadent's death in the hospital that the Decedent's problems were likely caused by the drug Dr. McGrew prescribed. The notice requirement does not mean that the plaintiffs must understand the precise legal details of their claim. Rather, the statute of limitations is tolled "only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry." *Teeters v. Currey*, 518 S.W.2d 512, 518 (Tenn. 1974) (Harbison, J., concurring). We find as did the trial court that the Plaintiffs had actual knowledge of the wrong as a result of what the Decedent told them.

After careful review, we find from the undisputed facts that the Plaintiffs had notice of their claim no later than February 27, 2003. Accordingly, we agree with the trial court's ruling that the Plaintiffs' cause of action, initially brought on March 3, 2004, was not timely filed.

The Judgment of the trial court is affirmed. Costs of this appeal are assessed against the Appellants.

 

 

_____
J. STEVEN STAFFORD, J.