IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 18, 2024 Session

## ROBERT ELMORE v. TRAVIS MILLS, ET AL.

**Appeal from the Circuit Court for Jefferson County**
No. 26995-III    Rex Henry Ogle, Judge

_____

**No. E2023-01044-COA-R9-CV**
_____


Lonnie Elmore ("Decedent") died on July 5, 2020, a few weeks after being treated by Travis Mills, CRNA, ("Mills") an employee of Lakeway Regional Anesthesia Services, PLLC ("Lakeway") (collectively "Defendants") and Angelo J. Sorce, M.D., ("Sorce"), an employee of Tennessee Valley Orthopaedics, LLC ("TVO").[1]  On July 2, 2021, Robert Elmore, as Executor of the Estate of Lonnie Elmore, ("Plaintiff") sent pre-suit notice to Defendants.  Relying on the 120-day extension provided for by Tenn. Code Ann. § 29-26-121(c), Plaintiff filed his complaint alleging wrongful death on November 1, 2021, in the Circuit Court for Jefferson County ("the Trial Court").  Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), claiming that the accrual of Plaintiff's cause of action arose no later than June 21, 2020, and Plaintiff, accordingly, provided pre-suit notice past the one-year statute of limitations, rendering his complaint untimely.  The Trial Court denied Defendants' motion to dismiss.  This interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9, followed.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and JEFFREY USMAN, JJ., joined.

---

[1] Plaintiff filed the complaint against Defendants, Sorce, and TVO.  Sorce and TVO filed their own motion to dismiss, which the Trial Court also denied.  Sorce and TVO filed a Tennessee Rule of Appellate Procedure 9 interlocutory appeal, which was docketed as a separate appeal from Defendants' appeal.  Although Sorce and TVO also are defendants in this case, we refer only to Mills and Lakeway as "Defendants," given that this Opinion adjudicates only their interlocutory appeal.

Edward G. White, II; B. Chase Kibler; and John P. Taylor, Knoxville, Tennessee, for the appellants, Travis Mills, and Lakeway Regional Anesthesia Services, PLLC.

Heidi A. Barcus and Meagan Collver, Knoxville, Tennessee, for the appellants, Angelo J. Sorce and Tennessee Valley Orthopaedics, LLC.

R. Christopher Gilreath, Nashville, Tennessee, for the appellee, Robert Elmore, as Executor of the Estate of Lonnie Elmore.

## OPINION

## Background

Plaintiff filed a complaint alleging wrongful death against Defendants in the Trial Court on November 1, 2021, alleging the following in pertinent part:

2. . . . At all times relevant to this case, Defendant Travis Mills is a certified registered nurse anesthetists licensed to practice and was practicing in the State of Tennessee. At all times relevant to this case, Defendant Mills was an employee, servant, actual and/or implied agent of Defendant Lakeway Regional Anesthesia Services, PLLC, and at all times relevant was acting within the scope and purpose of his employment and/or agency of such Defendant(s).

3. . . . At all times relevant to this case, Defendant Lakeway Regional Anesthesia Services, PLLC acted by and through its employees, servants, agents, or apparent agents, including but not limited to Defendant Travis Mills, CRNA, who were, at all times relevant to this case, acting within the scope and/or course of their agency with Defendant Lakeway Regional Anesthesia Services, PLLC.

* * *

6. Plaintiff has complied with the notice requirement set forth at Tennessee Code Annotated §29-26-121(a), and documentation of such compliance has been provided consistent with the requirements of Tennessee Code Annotated §29-26-121.

7. On or about 3:13 p.m. on June 16, 2020, Plaintiff's decedent, Lonnie Elmore, age 76, presented to Jefferson Memorial Hospital with left hip pain after falling at home. Mr. Elmore was admitted to the hospital with a diagnosis of a left femoral neck fracture in his hip.

8. Dr. Christian F. Lansing agreed to admit Mr. Elmore, and consequently became Mr. Elmore's attending physician during his stay at Jefferson Memorial Hospital.

9. On June 16, 2020, Dr. Lansing met with Mr. Elmore to create the patient's history and physical. Dr. Lansing noted that he requested an orthopedic consult from Defendant Angelo J. Sorce, M.D. and that Defendant Sorce had consulted on the case.

10. Dr. Lansing further noted that the patient will be nothing by mouth ("n.p.o.") after midnight. Dr. Lansing made this note because surgery was likely to happen the next day, on June 17, 2020.

11. The next morning, on June 17, 2020, Defendant Sorce met with Mr. Elmore in person.

12. Defendant Sorce determined that Mr. Elmore required a left hip bipolar hemiarthroplasty, and that the surgery would be done the next day, June 18, 2020, after Mr. Elmore was cleared for surgery by medical services.

13. At or around 10:51 a.m. on June 17, 2020, Defendant Sorce ordered Mr. Elmore to be on regular diet.

14. After Defendant Sorce changed Mr. Elmore's orders to include a regular diet, nurses visited Mr. Elmore's room at least five separate times on June 17, 2020.

15. One nurse that visited Mr. Elmore on June 17, 2020, Cynthia Leonard, RN, also entered Defendant Sorce's regular diet order into the medical record.

16. However, later on June 17, 2020, after Defendant Sorce's consultation, Defendants, individually, jointly, and/or severally, decided to go ahead with the left hip surgery on Mr. Elmore on June 17, 2020 rather than June 18, 2020. Mr. Elmore was brought back to the operating suite.

17. Mr. Elmore, per Defendant Sorce's orders, had not been n.p.o. that day.

18. Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by asking nursing staff if a food tray had been delivered and/or consumed.

19. Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by asking the Food and Nutrition Department if a food tray had been delivered and/or consumed.

20. Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by reviewing a call log to see if a meal tray was requested and/or delivered.

21. Defendants, individually, jointly, and/or severally, suspected Mr. Elmore had consumed a meal tray on June 17, 2020 prior to surgery.

22. However, despite no investigation or clear understanding whether Mr. Elmore had consumed a meal tray, Defendants, individually, jointly, and/or severally, proceeded with surgery on June 17, 2020.

23. Prior to initiation of anesthesia and surgery on June 17, 2020, Mr. Elmore had a full stomach and copious amounts of partially digested food and liquid.

24. Defendant Travis Mills, CRNA administered general endotracheal tube anesthesia starting at or around 7:02 p.m. on June 17, 2020.

25. Defendant Sorce proceeded with his surgery starting at or around 7:20 p.m on June 17, 2020.

26. After Defendant Sorce completed with his operation, the patient had an aspiration event.

27. Defendant Mills was then in the operating room for an additional twenty minutes performing stomach content aspiration and protecting the airway.

28. Defendant Mills decided to keep the patient ventilated. Defendant Mills planned on weaning the patient from the vent in the morning hours.

29. Defendant Mills decided to keep the patient ventilated because the patient was suffering from hypoxic respiratory failure.

30. The next morning, on June 18, 2020, Mr. Elmore was extubated, but he was quickly reintubated for hypoxic failure with respiratory acidosis.

31. The patient had a pulmonary consultation and underwent a chest x-ray. It was determined Mr. Elmore was suffering from pneumonia.

32. On June 20, 2020, Mr. Elmore underwent a sedation vacation, but was unable to awaken, did not follow commands, and was only minimally responsive.

33. Healthcare providers determined Mr. Elmore was encephalopathic.

34. On June 21, 2020, Mr. Elmore was transferred to University of Tennessee Medical Center for further pulmonology evaluation and for possible neurology evaluation due to the persistent encephalopathy and respiratory failure. Mr. Elmore's discharge diagnosis included acute hypoxic hypercapnic respiratory failure, aspiration pneumonia of the left lower lobe with mucus plugging, acute metabolic encephalopathy, and sepsis due to pneumonia.

35. On June 22, 2020, Mr. Elmore, now a patient of healthcare providers at University of Tennessee Medical Center, underwent a bronchoscopy and left lower lobe bronchoalveolar lavage. However, Mr. Elmore's respiratory function still declined, and his encephalopathy progressed, so Mr. Elmore had to be intubated again.

36. Post intubation, Mr. Elmore became hypotensive, which required vasopressors treatment.

37. Healthcare providers determined Mr. Elmore was suffering from severe septic shock, likely due to a pulmonary source. Healthcare providers at University of Tennessee Medical Center placed a central line and volume resuscitation.

38. On June 29, 2020, Mr. Elmore was extubated. His tube feed remained on hold because Mr. Elmore had not had oral nutrition due to persistent aspiration.

39. On July 2, 2020, healthcare providers determined they had done all they could for Mr. Elmore, and he was discharged home with hospice care.

40. Three days later, on July 5, 2020, Mr. Elmore passed away. His cause of death was acute respiratory failure and left lower lobe pneumonia.

41. Full stomach is a condition in which a patient has ingested a certain amount of food or drink within a certain period prior to anesthetic induction. Food or full stomach poses a risk of pulmonary aspiration of gastric contents during the perioperative period. The morbidity associated

with aspirational pneumonia can be attributed to the acidity and volume of the aspirate. First, medical caregivers should avoid administering anesthetic on a patient with a full stomach if the surgery can be delayed. Second, if the surgery is not delayed, then medical caregivers must properly evaluate and assess the patient pre-operatively to determine if the patient is a candidate for medication that would aide in digesting the food on an expedited basis. Third, if the surgery is not delayed, medical caregivers administering anesthetic should properly evaluate and assess the appropriate type of anesthetic to use on the patient to minimize the risk of aspiration. Fourth, if the surgery is not delayed, medical caregivers administering anesthetic on a patient with a full stomach must monitor the patient closely for signs of aspiration. If the patient starts to show signs of aspiration, then medical caregivers should perform a rapid sequence induction and order appropriate medication to decrease nausea, aspiration, and treat potential infection from aspiration.

42. At all times relevant to this case, Defendants individually, jointly, and/or severally were aware that serious, life-threatening, and fatal respiratory failure could occur with Plaintiff's decedent based on the medical circumstances presented. In order to prevent such significant harm from occurring, Defendants, individually, jointly, and/or severally were aware that particular precautions were necessary in order to protect Plaintiff's decedent from suffering hypoxic respiratory failure, aspirational pneumonia, which led to significant respiratory distress and/or other life-threatening conditions.

43. At all times relevant to this case, Defendants were generally aware of the medical necessity to operate on patients without a full stomach and, if the Defendants were to proceed forward with the surgery, then to closely monitor patients for aspiration and perform a rapid sequence induction and immediately order appropriate medication to decrease nausea, aspiration, and treat potential infection from aspiration.

44. Defendant Travis Mills, CRNA was negligent and/or deviated from the recognized standard of acceptable professional practice[.]

* * *

45. Defendant Lakeway Regional Anesthesia Services, PLLC is vicariously liable for the negligence of its employees, agents, and apparent agents concerning the treatment and medical care of Lonnie Elmore at all times relevant.

Plaintiff demanded a jury trial and sought compensatory damages in the amount of $1.5 million for the wrongful death of Decedent.

In February 2022, Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), arguing in relevant part:

> This is a healthcare liability action, and the Complaint alleges acts of negligence against these Defendants arising out of a surgery on June 17, 2020. (¶ 24) The allegations of the Complaint demonstrate that the plaintiff was apprised of facts sufficient to place a reasonable [person] on notice of a potential claim no later than June 21, 2020. (¶ 34) However, notice was not sent to Defendants until July 2, 2021, more than a year later (see attachments to Complaint). Plaintiffs failed to provide proper pre-suit notice in this case, pursuant to T.C.A. 29-26-121(a)(2) and -121(c), and therefore the statute of limitations was never tolled. As this matter was not timely filed, it must be dismissed pursuant to the Tennessee Rules of Civil Procedure.

Plaintiff filed a response, arguing that his cause of action did not accrue until Decedent's death on July 5, 2020, meaning pre-suit notice was timely provided within the one-year statute of limitations.

After a hearing in November 2022, the Trial Court entered an order denying Defendants' motion to dismiss in January 2023. The Trial Court concluded:

> After consideration of the filed memoranda, arguments of counsel, and the record in this cause, the Court hereby finds that the statute of limitations in this case was July 5, 2021, and therefore Plaintiff's pre-suit notices mailed July 2, 2021 were timely, and that by operation of Tenn. Code Ann. §29-26-121, Plaintiff's filing of the Complaint on November 1, 2021 was timely.

The Trial Court attached and incorporated the transcript of its considerations and ruling from the November hearing.

As reflected in the transcript, the Trial Court reasoned:

> The first issue the Court wants to deal with is the statute of limitations. Each case has to stand or fall on its own set of facts. And in this case, of course as we know, on the Motion to Dismiss that we must take the essential elements of the complaint as true.

- 7 -

The Court thinks based upon the particular facts of this case, the fact that the death of the deceased happened so quickly after every event -- after all of the preceding events that it was so quick, within weeks, the Court finds that the triggering date for purposes of the statute of limitations is July 5th of 2021 for purposes of the statute of limitations and all of the notices.

In February 2023, Defendants filed a motion for interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9. The Trial Court granted Defendants' motion for interlocutory appeal, concluding that the issue presented was "critical", and "if reversed on appeal, could prevent additional and protracted litigation." The Trial Court further ordered that the case be stayed pending conclusion of this appeal.

In July 2023, Defendants filed their application for Rule 9 interlocutory appeal in this Court. This Court entered an order granting their Rule 9 application, stating the issue on appeal as follows: "Whether the Trial Court erred by denying the motion to dismiss upon its determination that the plaintiff's pre-suit notice was timely because the cause of action accrued on July 5, 2020, the date of the decedent's death."

## Discussion

We granted this interlocutory appeal to consider whether the Trial Court erred by denying Defendants' motion to dismiss based upon its determination that Plaintiff's pre-suit notice was timely. We review the Trial Court's denial of Defendants' motion to dismiss *de novo* with no presumption of correctness. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). Our Supreme Court has previously explained:

> A Tenn. R. Civ. P. 12.02(6) motion tests only the legal sufficiency of the plaintiff's complaint, not the strength of the plaintiff's proof. *Highwoods Props., Inc. v. City of Memphis,* 297 S.W.3d 695, 700 (Tenn. 2009). Thus, courts ruling on a Tenn. R. Civ. P. 12.02(6) motion " 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.' " *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 31-32 (Tenn. 2007)). The determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review de novo with no presumption of correctness. *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d 141, 144 (Tenn. 2001).

*Id.* at 455-56. Furthermore, "courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would

entitle the plaintiff to relief." *Crews v. Buckman Lab'ys. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002).

Pursuant to Tenn. Code Ann. § 29-26-116(a)(1) (West eff. Apr. 23, 2012), the statute of limitations in health care liability actions is one year. However, if the plaintiff does not discover the alleged injury within "such one-year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2); s*ee Vandergriff v. Erlanger Health Sys.*, No. E2022-00706-COA-R3-CV, 2023 WL 8257876, at *3 (Tenn. Ct. App. Nov. 29, 2023) ("Under subsection (a)(2), the statute of limitations is subject to the discovery rule, which states that the limitations period shall be one year from the date of such discovery."). Tenn. Code Ann. § 29-26-121(a)(1) (West eff. Apr. 24, 2015) mandates that a person asserting a potential claim for health care liability must give written notice of the potential claim to each health care provider that will be named as a defendant at least 60 days before filing his complaint. When the plaintiff provides pre-suit notice, the statute of limitations is extended for 120 days from the date of the expiration of the statute of limitations. Tenn. Code Ann. § 29-26-121(c). "Because the failure to comply with a statute of limitations is an affirmative defense, *see* Tenn. R. Civ. P. 8.03, the Defendants bear the burden of proof on the issue." *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010).

Our Supreme Court in *Sherrill v. Souder* explained the operation of the discovery rule in health care liability actions as follows:

> [A] medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.

*Id.* at 595. This Court has also explained:

> The cause of action accrues and the statute of limitations begins not only when a plaintiff acquires actual knowledge of a claim but also upon a plaintiff's constructive or inquiry notice of a claim. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012).

- 9 -

While the question of whether a plaintiff had constructive knowledge typically is for the trier of fact to decide, judgment on the pleadings or dismissal is appropriate where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff should not have known through the exercise of reasonable care and diligence that she was injured as a result of a defendant's wrongful conduct.

*Daffron v. Mem'l Health Care Sys., Inc.*, 605 S.W.3d 11, 20 (Tenn. Ct. App. 2019).

The Court in *Sherill*, however, also explained that, "Mere awareness of an injury does not necessarily include knowledge that the injury was caused by a breach of the standard of care by a particular defendant." *Sherrill*, 325 S.W.3d at 597. "'The question,' then, 'is not when the injury occurred, but when the relevant person became sufficiently aware of the injury and the wrongful conduct of the defendant to trigger the running of the statute of limitations.'" *Archer v. Sodexo Operations, LLC*, No. W2020-01176-COA-R9-CV, 2022 WL 1657222, at \*7 (Tenn. Ct. App. May 25, 2022) (quoting *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 558 (Tenn. Ct. App. 2013)).

In this case, Plaintiff sent Defendants pre-suit notice on July 2, 2021, and relied upon the 120-day extension, filing his complaint for Decedent's wrongful death on November 1, 2021. Defendants argued before the Trial Court, and do so before this Court, that the cause of action accrued no later than June 21, 2020, the day Decedent was transferred to University of Tennessee Medical Center. Plaintiff argued, and the Trial Court agreed, that the cause of action did not accrue until Decedent's death on July 5, 2020, rendering his pre-suit notice timely and guaranteeing him the 120-day extension. The question before us then is whether the cause of action accrued before July 2, 2020, a year prior to the date Plaintiff sent pre-suit notice.

We first address Plaintiff's argument that the accrual of the health care liability claim is based upon Decedent's, rather than Plaintiff's, discovery of the wrongful conduct. Plaintiff argues that "the proper inquiry is when the injured patient, Lonnie Elmore, reasonably knew or should have known" of the wrongful conduct and that the Trial Court properly determined that Decedent could not have reasonably known that errors during his surgery led to his injury and death. Defendants instead contend that courts consider "the knowledge of the **plaintiff**, who stands in the shoes of the decedent, for purposes of determining the relevant date upon which the statute of limitations begins to run." We agree with Defendants. This Court has previously concluded: "In a wrongful death health care liability action, Tennessee courts have considered whether the plaintiff bringing the suit, rather than the decedent, was put on notice of an actionable

wrong." *Daffron*, 605 S.W.3d at 20.[2] *See also Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 559 (Tenn. Ct. App. 2013) ("As a point of practice, we note that in a wrongful death medical malpractice action, we will 'consider [ ] whether the plaintiff bringing the suit, rather than the [d]ecedent, had notice of an actionable wrong.'") (quoting *Holliman v. McGrew*, 343 S.W.3d 68, 75 (Tenn. Ct. App. 2009)). We therefore consider when Plaintiff was "aware of facts sufficient to put a reasonable person on notice that [Decedent] ha[d] suffered an injury as a result of wrongful conduct" in deciding whether Plaintiff's pre-suit notice was provided within the one-year statute of limitations. *See Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994).

Based upon the face of the complaint, Plaintiff alleged no facts that would indicate when he was or should have been on notice that Decedent had suffered an injury as a result of Defendants' wrongful conduct. Nevertheless, Defendants argue that because the complaint was "replete with allegations that injury occurred between June 17, 2020 and June 21, 2020," Plaintiff "knew, or should have known, a cause of action accrued in this matter no later than June 21, 202[0]." None of the alleged facts, however, demonstrate what Plaintiff knew or should have known contemporaneously to June 21, 2020.

Although Plaintiff alleged that Decedent's injury was the result of treatment provided between June 17 and June 21 of 2020, this allegation alone does not reveal when Plaintiff became aware or should have become aware that Decedent's injury was caused by Defendants' wrongful conduct. The fact that Plaintiff alleged that the injury occurred during treatment does not indicate that the wrongful conduct that caused the injury was discovered at the time of injury. A cause of action does not accrue every time an adverse outcome occurs during surgery; rather, a cause of action accrues when a plaintiff discovered or should have discovered that the adverse outcome was the result of wrongful conduct, as well as the identity of the person or persons whose wrongful conduct caused the injury. *See Sherrill*, 325 S.W.3d at 597 ("Mere awareness of an injury does not necessarily include knowledge that the injury was caused by a breach of the standard of care by a particular defendant."). Defendants effectively would have us nullify the discovery rule by inferring Plaintiff's knowledge based upon nothing more than the date of injury. We decline their request to do so.

_____

[2] As Plaintiff points out, this Court in *Daffron* expressed

> misgivings about an analysis centered on [the plaintiff's] knowledge when, from the record before us, she had no authority to file a health care liability suit on her Father's behalf while he was alive. This also raises the question of when the statute of limitations would have started to run if an individual other than [the plaintiff] had brought this wrongful death health care liability action.

*Daffron*, 605 S.W.3d at 20 n.2. This Court retains these misgivings, but as this Court also noted in *Daffron*, this is the "state of the law" "based on the applicable precedents."

In *Daffron*, a case cited by both parties, this Court considered whether the plaintiff, the daughter of the decedent, discovered or should have discovered the decedent's cause of action more than a year before she provided pre-suit notice. 605 S.W.3d at 22. While in the care of the defendant hospital, the plaintiff's father developed sores, which allegedly led to his death. *Id.* at 14. This Court concluded that the plaintiff's "discovery of Decedent's sores alone" did not "establish her knowledge beyond a reasonable trier of fact's ability to find otherwise since such sores can develop even in the absence of negligence." *Id.* at 23. Rather, this Court found that the plaintiff was placed on notice of the claim given her conversation with a nurse who had treated her father and told the plaintiff that she "ought to look into her father's care," the plaintiff's consultation with an attorney, and her receipt of her father's medical records, all occurring more than one year prior to the date she provided pre-suit notice. *Id.* at 23-24. In *Daffron*, the discovery of the injury alone did not constitute notice of a claim, but rather the cause of action accrued when the plaintiff was aware of facts sufficient to place a reasonable person on notice that her father's injury was the result of another's wrongful conduct. *Id.*

Unlike the facts in *Daffron*, the complaint in this case contains no allegations reflecting what any physicians or nurses communicated to Plaintiff at the time of Decedent's treatment, whether Plaintiff was at the hospital when these events occurred, or even what Plaintiff's relation is to Decedent. We have no way of knowing what Plaintiff knew or should have known as of June 21, 2020. Plaintiff points out in his brief that Defendants' argument is that because "the malpractice alleged occurred between June 17-20, 2020, that must mean Robert Elmore had knowledge of the same within that timeframe, and therefore suit is barred by operation of the statute of limitations," but the "record does not establish Robert Elmore's factual knowledge of Lonnie Elmore's condition in June or July 2020, nor the timing of when Robert Elmore should have or did become aware of such information." We agree. We cannot infer what Plaintiff knew or should have known as of June 21, 2020, solely based upon the fact that Plaintiff alleged actionable wrongs that took place by June 21, 2020.[3]

_____

[3] Defendants also argue that Plaintiff's pre-suit notice letter and HIPAA authorization "clearly demonstrate that **by no later than June 21, 2020**," Plaintiff was put on notice of the claim because these attachments state that Defendants treated Decedent between June 16 and June 21 of 2020. Plaintiff argues that the pre-suit notice letter should not be considered as a "declaration or admission of a party," given that it is not part of the complaint. It is unnecessary for this Court to determine to what extent a pre-suit notice letter is part of the complaint, given the deficiency of Defendants' argument. Even if we did consider the pre-suit notice letter and HIPAA authorization as part of the complaint, the mere dates of treatment in no way demonstrate that Plaintiff knew or should have known of the wrongful conduct at the time of treatment. These attachments merely demonstrate that Plaintiff was apprised of sufficient facts of wrongful conduct as of July 2, 2021, the date the letter and authorization were sent.

Based upon the allegations of the complaint, we cannot conclude that "no reasonable trier of fact could conclude that" Plaintiff "should not have known through the exercise of reasonable care and diligence [by June 21, 2020] that" Decedent was injured as a result of Defendants' wrongful conduct. *Id.* at 20. Although Plaintiff may have known or should have known that Decedent was injured as a result of wrongful conduct by June 21, 2020, the alleged facts of the complaint are completely silent on this point. Given that Defendants bore the burden to allege and prove that Plaintiff failed to provide pre-suit notice within a year of the accrual of the action, and that we must consider only the complaint and provide Plaintiff with the benefit of all reasonable inferences, we are unable to conclude that Plaintiff failed to provide Defendants with timely pre-suit notice. We, however, respectfully disagree with the Trial Court's conclusion that "the statute of limitations in this case was July 5, 2021 . . . ." From the record at this stage of the proceedings as to the issue of when the statute of limitations ran, we hold only that Defendants failed to satisfy their burden on their motion to dismiss. In the event that this issue is litigated further on remand, we emphasize that the date the cause of action accrued was the date Plaintiff became "aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another" as well as the identity of the person or persons whose wrongful conduct caused the injury. *See Sherrill*, 325 S.W.3d at 595.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's denial of Defendants' motion to dismiss although for somewhat different reasons than the Trial Court. We remand for further proceedings consistent with this Opinion, and collection of costs below. Costs of the appeal are assessed against Defendants.

_____
D. MICHAEL SWINEY, CHIEF JUDGE